Ronda Baldwin-Kennedy, Esq. (SB #302813)
Jerome A. Clay, Esq. (SB #327175)
**LAW OFFICE OF RONDA BALDWIN-KENNEDY**
5627 Kanan Rd. #614
Agoura Hills, CA 91301
Phone: (951) 268-8977
Fax: (702) 974-0147
Email: ronda@lorbk.com

Raymond M. DiGuiseppe (SB# 228457)
law.rmd@gmail.com
The DiGuiseppe Law Firm, P.C.
4320 Southport-Supply Road, Suite 300
Southport, North Carolina 28461
Phone: 910-713-8804
Fax: 910-672-7705

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONALD MCDOUGALL, an individual; JULIANA GARCIA, an individual; SECOND AMENDMENT FOUNDATION; CALIFORNIA GUN RIGHTS FOUNDATION; and FIREARMS POLICY COALITION, INC., | Case No. 2:20-cv-02927 |
| Plaintiffs, | **FIRST AMENDED COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF** |
| vs. | |
| COUNTY OF VENTURA, CALIFORNIA; BILL AYUB, in his official capacity; WILLIAM T. FOLEY, in his official capacity, ROBERT LEVIN, in his official capacity; and VENTURA COUNTY PUBLIC HEALTH CARE AGENCY, | |

1
2

Defendants.

3

4    Plaintiff Donald McDougall, *et al*. ("Plaintiffs"), by and through counsel of

5    record, bring this complaint for injunctive and declaratory relief against the named

6
7    Defendants, and allege as follows:

8                                    **INTRODUCTION**

9    1.    California's local governments, whether legislatively or by executive

10   decree, cannot simply suspend the Constitution. Authorities may not, by decree or

11

12   otherwise, enact and/or enforce a suspension or deprivation of constitutional

13   liberties. And they certainly may not use a public health crisis as political cover to

14

15   impose bans and restrictions on rights they do not like.

16   2.    Firearm and ammunition product manufacturers, retailers, importers,

17
18   distributors, and shooting ranges are essential businesses that provide essential

19   access to constitutionally protected fundamental, individual rights. If firearms and

20
21   ammunition could be purchased online like other constitutionally protected

22   artifacts, such as paper, pens, ink, and technology products that facilitate speech,

23
24   then individuals could simply purchase what they need and have the items

25   delivered to their doorsteps. But because of an onerous and complicated federal,

26   state, and local regulatory scheme, people in California cannot exercise their

27
28   Second Amendment right to keep and bear arms without going in person to such

essential businesses—at least once for ammunition, and at least twice for firearms.

3.     In California, individuals are required to purchase and transfer firearms and ammunition through state and federally licensed dealers in face-to-face transactions or face serious criminal penalties. Shuttering access to arms, the ammunition required to use those arms, and the ranges and education facilities that individuals need to learn how to safely and competently use arms, necessarily closes off the Constitutional right to learn about, practice with, and keep and bear those arms. By forcing duly licensed, essential businesses to close or eliminate key services for the general public, government authorities are foreclosing the only lawful means to buy, sell, and transfer firearms and ammunition available to typical, law-abiding individuals in California. Such a prohibition on the right to keep and bear arms is categorically unconstitutional.

4.     The circumstances posed by the COVID-19 Novel Coronavirus outbreak present challenges to all of us, including the government. Responding to those challenges, for example, some law enforcement officials are releasing inmates from jails. With governments having no legal duty to protect the people they serve, and with no guarantee that law enforcement can or will respond to 911 calls during this crisis or after it (let alone in time to prevent a crime), people who choose to exercise their fundamental, individual rights are not part of the crisis; rather, they are responding rationally to the impacted caused by the crisis.

5.      Such governmental action during the height of an acknowledged crisis also violates the constitutional checks and balances that are the hallmark of limited government and separation of powers. This suit challenges not only the underlying orders and enforcement policies for their blatant violations of enumerated constitutional rights, it also challenges the manner in which those policies were enacted. It is a bedrock principle of our constitutional order that legislatures may not enact overbroad and effectively bound-less laws that give unfettered discretion to executive agencies to 'figure out' the details later, while also 'passing the buck' to those executive agencies to make and enforce the policies that impact the people's lives, liberty, and property.

6.      The need for self-defense during uncertain times is precisely when Plaintiffs and Plaintiffs' members must be able to exercise their fundamental rights to keep and bear arms. The challenges we all face because of the COVID-19 Coronavirus, or any other such emergency, does not, cannot, and must not justify or excuse government infringements upon fundamental human rights. The declaratory and injunctive relief that Plaintiffs have been forced to seek through this action is necessary to uphold this bedrock principle of the United States Constitution.

**PARTIES**

*Individual Plaintiffs*

7.     Plaintiff Donald McDougall is a natural person, a citizen of the United States, and a resident of Ventura County, California. Plaintiff McDougall is not prohibited from possessing or acquiring arms, including firearms and ammunition, under state and federal law. Plaintiff McDougall holds a valid California Carry Concealed Weapons License ("CCW"). Plaintiff McDougall is concerned about his safety and the safety of his family, wants to exercise his right to keep and bear arms – including firearms, ammunition, magazines, and appurtenances – and would do so, but for the reasonable and imminent fear of arrest and criminal prosecution under Defendants' laws, policies, orders, practices, customs, and enforcement, and because Defendants' orders and actions have closed firearm and ammunition retailers and ranges.

8.     Plaintiff Garcia is a natural person, a citizen of the United States, and a resident of Ventura County, California. Plaintiff Garcia is not prohibited from possessing or acquiring arms, including firearms and ammunition, under state and federal law. Plaintiff Garcia does not hold a valid California Firearm Safety Certificate ("FSC") but wishes to obtain one. Plaintiff Garcia is concerned about her safety and the safety of her family, wants to exercise her right to keep and bear arms – including firearms, ammunition, magazines, and appurtenances – and would

do so, but for the reasonable and imminent fear of arrest and criminal prosecution under Defendants' laws, policies, orders, practices, customs, and enforcement, and because Defendants' orders and actions have closed firearm and ammunition retailers and ranges.

### *Institutional Plaintiffs*

9.     Plaintiff Second Amendment Foundation, Inc. ("SAF") is a nonprofit educational foundation incorporated under the laws of Washington with its principal place of business in Bellevue, Washington. SAF seeks to preserve the effectiveness of the Second Amendment through education, research, publishing, and legal action programs focused on the Constitutional right to possess firearms, and the consequences of gun control. SAF has over 650,000 members and supporters nationwide, including thousands of members in California. SAF brings this action on behalf of itself and its members. Individual Plaintiffs are members of SAF.

10.     Plaintiff California Gun Rights Foundation ("CGF") is a nonprofit foundation incorporated under the laws of California with its principal place of business in Sacramento, California. CGF serves its members, supporters, and the public through educational, cultural, and judicial efforts to defend and advance Second Amendment and related rights. CGF has thousands of members and supporters in California, including members in Defendants' jurisdiction and the

Individual Plaintiffs herein. The interpretation and enforcement of the Second Amendment directly impacts CGF's organizational interests, as well as the rights of CGF's members and supporters. CGF has expended and diverted resources, and has been adversely and directly harmed, because of Defendants' laws, policies, practices, and customs challenged herein. CGF brings this action on behalf of itself, its members, supporters who possess all the indicia of membership, and similarly situated members of the public.

11. Plaintiff Firearms Policy Coalition, Inc. ("FPC") is a nonprofit organization incorporated under the laws of Delaware with a place of business in Sacramento, California. The purposes of FPC include defending and promoting the People's rights – especially but not limited to First and Second Amendment rights – advancing individual liberty and restoring freedom. FPC serves its members and the public through legislative advocacy, grassroots advocacy, litigation and legal efforts, research, education, outreach, and other programs. FPC's has members in the State of California, including members in Defendants' respective jurisdiction and the Individual Plaintiffs herein. FPC represents its members and supporters— who include gun owners, individuals who wish to acquire firearms and ammunition, licensed California firearm retailers, shooting ranges, trainers and educators, and others—and brings this action on behalf of itself, its members, supporters who possess all the indicia of membership, and similarly situated

members of the public. FPC has expended and diverted resources, and is adversely and directly harmed, because of Defendants' laws, policies, orders, practices, and customs challenged herein.

### *Defendants*

12.     Defendant County of Ventura, California is a local governmental entity organized under the Constitution and laws of the State of California, possessing legal personhood within the meaning of 42 U.S.C. § 1983. The County is responsible for executing and administering its laws, orders, customs, practices, and policies at issue in this lawsuit.

13.     Defendant Bill Ayub is the Sheriff of Defendant Ventura County, California and head of Ventura County Sheriff's Office. As the Sheriff, he is responsible within the County for the enforcement and execution of the laws, orders, policies, practices, customs, and actions at issue in this lawsuit. Defendant Ayub is sued in his official capacity.

14.     Defendant William T. Foley is the Director of the Ventura County Public Health Care Agency, which issues and enforces some of Defendant Ventura County's laws, and related California Government and Health and Safety Codes, including those at issue herein. Defendant Foley is sued in his official capacity.

15.     Defendant Robert Levin is the Public Health Medical Director and Health Officer for Defendant County of Ventura, California. Defendant Levin

issued and enforces the Defendant County's Order. On information and belief, Defendant Levin reports to Defendant Foley. Defendant Levin is sued in his official capacity.

16.     The Ventura County Public Health Care Agency is the department responsible for public health in Ventura County, which issues and enforces some of Defendant Ventura County's Orders and laws, and related California Government and Health and Safety Codes, including those at issue herein.

## JURISDICTION AND VENUE

17.     This Court has jurisdiction over all claims for relief pursuant to 28 U.S.C. §§ 1331, 1343, 2201, and 2202, and 42 U.S.C. §§ 1983 and 1988, as this action seeks to redress the deprivation under color of the laws, statutes, ordinances, regulations, customs, and usages of the State of California, of the rights, privileges or immunities secured by the United States Constitution.

18.     Venue lies in this Court under 28 U.S.C. § 1391, as the events giving rise to Plaintiffs' causes of action arose or exist in this District in which the action is brought.

## STATEMENT OF FACTS COMMON TO ALL CLAIMS
### Constitutional Background

19.     The Second Amendment to the United States Constitution provides: "A well-regulated Militia being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed."

20.     The Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation." *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008). And it "elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Id* at 635.

21.     The Second Amendment is fully applicable to the States through the Fourteenth Amendment's Due Process and Privileges or Immunities Clauses. *McDonald v. City of Chicago*, 561 U.S. 742, 750 (2010); *id*. at 805 (Thomas, J., concurring). In McDonald, the Supreme Court held "that the Second Amendment right is fully applicable to the States." *Id*. at 750. And Justice Thomas further held that the "right to keep and bear arms is a privilege of American citizenship that applies to the States through the Fourteenth Amendment's Privileges or Immunities Clause." *Id*. at 806.

22.     Article IV, § 2, Cl. I of the United States Constitution provides: "The citizens of each state shall be entitled to all privileges and immunities of citizens in the several states."

23.     The Fifth Amendment to the United States Constitution provides in the pertinent part:

> No person shall … be deprived of life, liberty, or property, without due process of law…

24.     The Fourteenth Amendment to the United States Constitution provides in pertinent part:

> No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

25.    Individuals have a right to travel outside their county of residence.

26.    Individuals have a right to keep and bear arms, including but not limited to, buying, selling, transferring, transporting, carrying, and practicing safety and proficiency with firearms, ammunition, magazines, and appurtenances, under the Second and Fourteenth Amendments to the United States Constitution.

27.    In 2008, the United States Supreme Court held that the District of Columbia's requirement that permitted firearms within the home, but required that said firearms in the home be kept inoperable, made it impossible for citizens to use firearms for the core lawful purpose of self-defense and was hence unconstitutional. *District of Columbia v. Heller*, 554 U.S. 570, 630 (2008).

28.    In 2010, the United States Supreme Court held that—the Second Amendment right to keep and bear arms is—fundamental to our scheme of ordered liberty and, therefore, incorporated against the states through the Due Process Clause of the Fourteenth Amendment. *McDonald v. Chicago*, 130 S. Ct. 3020, 3036 (2010).

29.    The "central" – but not only – holding of the Supreme Court in *Heller* was "that the Second Amendment protects a personal right to keep and bear arms

for lawful purposes, most notably for self-defense within the home." *McDonald*, 561 U.S. at 780. "The very enumeration of the right takes out of the hands of government—even the Third Branch of Government—the power to decide on a case-by-case basis whether the right is really worth insisting upon." *Heller*, 554 U.S. at 634.

30.     A two-part test, and tiered scrutiny generally, is inappropriate for laws that infringe upon the Second Amendment right to keep and bear arms, including the Orders and enforcement actions at issue in this case.

31.     The fundamental, individual right to keep and bear loaded, operable firearms in the home includes the right to lawfully acquire firearms, ammunition, magazines, and appurtenances.

32.     Individuals have a right to buy, sell, transfer, and practice with arms, including but not limited to, firearms, ammunition, magazines, and required appurtenances.

33.     Licensed firearm and ammunition retailers and shooting ranges are necessary to individuals' lawful acquisition of firearms and ammunition, including but not limited to complying with federal and state background check requirements, due to the onerous and complicated web of regulatory schemes that prohibit the exercise of the constitutional right to keep and bear arms without going

in person to these essential businesses – at least once for ammunition and at least twice for firearms.

### FACTS COMMON TO ALL CLAIMS

#### *State and Federal Orders*

34.    On or about March 4, 2020, Governor Newsom proclaimed a State of Emergency as a result of COVID-19.

35.    On March 19, 2020, Governor Gavin Newsom signed Executive Order N-33-20,[1] directing all individuals living in California to "stay home or at their place of residence except as needed to maintain continuity of operations of the federal critical infrastructure sectors." Executive Order N-33-20 is in place until further notice.

36.    The Governor's N-33-20 directed all California residents "to heed" the directives of the State Public Health Officer, Sonia Angell, and incorporated into the Executive Order Director Angell's Order of the same date.[2]

37.    Director Angell's Order states that all people in California must stay home people "except as needed to maintain continuity of operations of the federal

---

[1]    Executive Department, State of California, Governor Gavin Newsom Executive Order N-33-20, https://www.gov.ca.gov/wp-content/uploads/2020/03/3.19.20-attested-EO-N-33-20-COVID-19-HEALTH-ORDER.pdf.

[2]    Order of the State Public Health Officer, Mar. 19, 2020, https://www.cdph.ca.gov/Programs/CID/DCDC/CDPH%20Document%20Library/COVID-19/Health%20Order%203.19. 2020.pdf.

critical infrastructure sectors, as outlined at https://www.cisa.gov/identifying-critical-infrastructure-during-covid-19."

38.    An express purpose of Angell's Order is to "establish consistency across" – i.e., throughout – "the state."

39.    Notably, on March 28, 2020, the Department of Homeland Security, Cyber-Infrastructure Division ("CISA"), issued an updated "ADVISORY MEMORANDUM ON IDENTIFICATION OF ESSENTIAL CRITICAL INFRASTRUCTURE WORKERS DURING COVID-19 RESPONSE," online at https://bit.ly/cisa-guidance-2020-3-28, under its Web page for "Guidance on the Essential Critical Infrastructure Workforce" during the COVID-19 pandemic.[3] While the CISA's guidance is advisory in nature, its findings and conclusions are inherently entitled to great weight in this context, particularly since they were "developed, in collaboration with other federal agencies, State and local governments, and the private sector" for the specific purpose of "help[ing] State, local, tribal and territorial officials as they work to protect their communities, while ensuring continuity of functions critical to public health and safety, as well as economic and national security." To that very end, CISA specifically determined

---

[3]    Guidance on the Essential Critical Infrastructure Workforce, https://www.cisa.gov/publication/guidance-essential-critical-infrastructure-workforce.

that "[w]orkers supporting the operation of firearm or ammunition product manufacturers, retailers, importers, distributors, and shooting ranges" fall squarely within the "critical infrastructure workforce."

### *Statutory Background*

40.    In California, a violation of a statute is a misdemeanor unless specified to be punishable otherwise. California Penal Code Prelim. Prov. 19.4 ('When an act or omission is declared by a statute to be a public offense and no penalty for the offense is prescribed in any statute, the act or omission is punishable as a misdemeanor.")

41.    Under California law and regulations, individuals must acquire modern firearms from duly licensed firearm retailers. *See generally* Penal Code sections 27545; 28050, et seq.

42.    Under California law and regulations, and with few very limited exceptions, individuals must acquire or otherwise transfer and take possession of ammunition from duly licensed firearm and/or ammunition retailers. *See generally* Penal Code sections 30342, et seq.; 30370, et seq.

43.    Under California law and regulations, individuals must acquire a valid Firearm Safety Certificate in order to acquire and take possession of firearms. *See generally* Penal Code section 26840.

44.   Government Code section 26620 states: "The office of county director of emergency services shall be held ex officio by the county sheriff."

45.   Government Code section 41601 states:

> For the suppression of riot, public tumult, disturbance of the peace, or resistance against the laws or public authorities in the lawful exercise of their functions, and for the execution of all orders of the local health officer issued for the purpose of preventing the spread of any contagious, infectious, or communicable disease, the chief of police has the powers conferred upon sheriffs by general law and in all respects is entitled to the same protection.

46.   Government Code section 101029 states:

> The sheriff of each county, or city and county, may enforce within the county, or the city and county, all orders of the local health officer issued for the purpose of preventing the spread of any contagious, infectious, or communicable disease. Every peace officer of every political subdivision of the county, or city and county, may enforce within the area subject to his or her jurisdiction all orders of the local health officer issued for the purpose of preventing the spread of any contagious, infectious, or communicable disease. This section is not a limitation on the authority of peace officers or public officers to enforce orders of the local health officer. When deciding whether to request this assistance in enforcement of its orders, the local health officer may consider whether it would be necessary to advise the enforcement agency of any measures that should be taken to prevent infection of the enforcement officers.

47.   Government Code section 101030 states:

> The county health officer shall enforce and observe in the unincorporated territory of the county, all of the

following: (a) Orders and ordinances of the board of supervisors, pertaining to the public health and sanitary matters[,] (b) Orders, including quarantine and other regulations, prescribed by the department[, and] (c) Statutes relating to public health.

48.     As shown below, County and County Health Officer Defendants' Orders, enforced by Defendant sheriffs and police chiefs, among others, commonly state:

Pursuant to Government Code sections 26602 and 41601 and Health and Safety Code section 101029, the Health Officer requests that the Sheriff and all chiefs of police in the County ensure compliance with and enforce this Order. The violation of any provision of this Order constitutes an imminent threat and menace to public health, constitutes a public nuisance, and is punishable by fine, imprisonment, or both.

49.     Under Defendants' laws, Orders, and enforcement policies, practices, customs, and actions it is a crime for individuals to leave their homes and go to and from, e.g., firearms and ammunition retailers and shooting ranges in order to comply with state laws regarding the FSC certificate requirement, as well as federal and state laws regarding the purchase and transfer of firearms and ammunition. And under the Defendants' Orders and enforcement policies, it is a crime for, e.g., firearm and ammunition retailers, shooting ranges, and FSC test service providers to operate them.

**Ventura County Orders**

50.     On March 17, 2020, Defendant Levine issued an order directing all residents of the County to shelter in place and restrict conduct (the "March 17 Order").[4]

51.     On March 20, 2020, Defendant Levine issued an additional order supplementing and extending the March 17, 2020 Order and directing all residents of the County to continue to shelter in place and restrict conduct until April 19, 2020 (the "March 20 Order").[5]

52.     On March 31, 2020, Defendant Levine issued an additional order supplementing and extending the March 17 and March 20 Orders and directing all residents of the County to continue to shelter in place and restrict conduct until April 19, 2020 (the "March 31 Order").[6]

53.     On April 9, 2020, Defendant Levine issued yet an additional order, supplementing and amending the existing March 17, March 20, and March 31

---

[4]   https://vcportal.ventura.org/CEO/VCNC/2020-03-17_Ventura_County_Public_Health_Order.pdf.

[5]   https://s30623.pcdn.co/wp-content/uploads/2020/03/StayWellAtHomeOrder.pdf.

[6]   https://vcportal.ventura.org/covid19/docs/March_31_2020_Order.pdf.

Orders (the "April 9 Order").[7] Furthermore, the April 9 Order bans all gatherings, and added three types of businesses to the list of "Essential Businesses".

54.     Under the Orders, the operation of firearm and ammunition retailers and shooting ranges are not "Essential Businesses," and individuals going to and from them is not "Essential Travel."

55.     Notably, the March 20 Order prohibits travel unless it is related to "Essential Travel" or "Essential Activities" as defined by the Order. Such travel and activities do not include departing Ventura County to a surrounding one for the purposes of obtaining firearms and/or ammunition.

56.     Pursuant to Section 8 of the April 9 Order, Defendant Sheriff Ayub and all chiefs of police of the County are tasked with the enforcement of the provisions set forth in the Order.

57.     Section 8 (Compliance) of the April 9 Order states:

> The violation of any provision of this Order constitutes a threat to public health and public nuisance per se… [p]ursuant to Government Code sections 26602 and 4160I and Health and Safety Code section 101029, the Health Officer requests that the Sheriff and all chiefs of police in the County ensure compliance with and enforce this Order.

---

[7]   https://vcportal.ventura.org/covid19/docs/2020-04-09_COVID19_PH_Order_April_9_2020.pdf.

58.     On information and belief, Defendants are actively enforcing their Orders, shuttering businesses and thus individuals' access to arms, the ammunition required to use those arms, and the ranges and education facilities that individuals need to learn how to safely and competently use arms by forcing firearm and ammunition product manufacturers, retailers, importers, distributors, and shooting ranges within the County of Ventura to close their doors and stop performing sales and transfers of firearms and ammunition.

59.     Plaintiff McDougall would like to take possession of a firearm that he ordered which is currently in the possession of a licensed firearm dealer. Plaintiff McDougall would also like to retrieve a firearm that is in the possession of a licensed gunsmith. Plaintiff McDougall is not prohibited from possessing firearms under state or federal law. Furthermore, Plaintiff McDougall possesses a California Carry Concealed Weapons License ("CCW"). He can take possession of a purchased firearm and ammunition upon the completion of a background check. However, due to Defendants' Orders and enforcement actions, he is unable to retrieve his firearms and unable to acquire ammunition.

60.     Plaintiff Garcia would like to purchase a firearm and ammunition for self-defense. Plaintiff Garcia is not prohibited from possessing firearms under state or federal law. Plaintiff Garcia does not possess a FSC but desires to obtain one. However, due to Defendants' Orders and enforcement actions, she is unable to

obtain a FSC nor able to purchase a self-defense firearm and ammunition. Plaintiff Garcia cannot purchase either firearms or ammunition except through a licensed firearms dealer and/or licensed ammunition vendor under California law.

61.    Plaintiffs McDougall and Garcia, Plaintiffs' members, and similarly situated individuals are being prevented from exercising their fundamental, individual right to keep and bear arms for self-defense.

62.    Plaintiffs McDougall and Garcia, and Plaintiffs' members, and similarly situated individuals are being prevented from traveling outside Ventura County to exercise their fundamental, individual right to keep and bear arms for self-defense.

## COUNT ONE
## DEPRIVATION OF CIVIL RIGHTS
## RIGHT TO KEEP AND BEAR ARMS
## U.S. CONST., AMENDS. II AND XIV, 42 U.S.C. § 1983

63.    Plaintiffs incorporate herein by reference the foregoing paragraphs as if fully set forth herein.

64.    There is an actual and present controversy between the parties.

65.    Defendants' orders, directives, policies, practices, customs, and enforcement actions prohibit law-abiding individuals from purchasing firearms and ammunition for the purpose of protecting themselves and their families (or for any other purpose). Independently and collectively, these stand as a bar on firearms

acquisition, ownership, and proficiency training at shooting ranges, and thus amount to a categorical ban on and infringement of the right to keep and bear arms and the privileges and immunities of citizenship.

66.   Plaintiffs, Plaintiffs' Members, and those similarly situated to them, seek to exercise their right to keep and bear arms for self-defense of themselves and their families, especially in times of crisis such as this.

67.   As to all claims made in a representative capacity herein, there are common questions of law and fact that substantially affect the rights, duties, and liabilities of many similarly-situated California residents and visitors who knowingly or unknowingly are subject to the California statutes, regulations, policies, practices, and customs in question.

68.   The relief sought in this action is declaratory and injunctive in nature, and the action involves matters of substantial public interest. Considerations of necessity, convenience, and justice justify relief to individual and institutional Plaintiffs in a representative capacity. Further, to the extent it becomes necessary or appropriate, the institutional Plaintiffs are uniquely able to communicate with and provide notice to their thousands of California members and constituents who are or would be party to any identifiable class of individuals for whose benefit this Court may grant such relief.

69.     Local governments do not have the power to categorically prohibit the keeping and bearing of arms by law-abiding people, nor can they close off the channels of access by which individuals lawfully obtain, transfer, and practice proficiency and safety with firearms and ammunition – even for brief periods of time.

70.     Arbitrariness and animus exists within the Defendants' Orders and enforcement actions, as the Orders classify as "essential" a variety of businesses which have no clear connection to *essential* goods and services (let alone expressly constitutionally protected goods and services), particularly in a time of crisis.

71.     For example,  "convenience stores, and other establishments engaged in the retail sale of unprepared food, canned food, dry goods, non-alcoholic beverages, fresh fruits and vegetables, pet supply, fresh meats, fish, and poultry, as well as hygienic products and household consumer products necessary for personal hygiene or the habitability, sanitation, or operation of residences" are deemed to expressly fall within this protected category of "Essential" businesses. So too are "auto-supply" stores, businesses that provide "that provide food, shelter, and social services, and other necessities of life for economically disadvantaged or otherwise needy individuals," and hardware stores.

72.     But, according to Defendants, firearm and ammunition retailers and shooting ranges are not essential, even though their connection to the *essentials* of

life in a crisis – securing the fundamental right of defense of the self and home through all lawful means – is crystal clear, as highlighted in CISA's published guidelines and the Constitution itself.

73.     In California, individuals are required to purchase and transfer firearms and ammunition through state and federally licensed dealers in face-to-face transactions or face serious criminal penalties.

74.     Shuttering access to arms, the ammunition required to use those arms, and the ranges and education facilities that individuals need to learn how to safely and competently use arms, necessarily closes off the Constitutional right to learn about, practice with, and keep and bear those arms.

75.     By forcing duly licensed, essential businesses to close or eliminate key services for the general public, government authorities are foreclosing the only lawful means to buy, sell, and transfer firearms and ammunition available to typical, law-abiding individuals in California.

76.     Because firearm and ammunition transfers must be facilitated by a licensed dealer, Defendants' orders, directives, policies, practices, customs, and enforcement actions amount to a ban on purchasing and transferring firearms and ammunition. As a result, law-abiding citizens who wish to comply with state laws – by submitting to, for example, background checks, waiting period laws, in-person

transfers and safety tests and demonstrations – are foreclosed from acquiring firearms and ammunition legally.

77.     Moreover, Defendants' laws, orders, policies, practices, customs, enforcement actions, and omissions criminalize and penalize conduct including but not limited to an individual's leaving their home, going to, and coming from a firearm and/or ammunition retailer, violating Plaintiffs', Plaintiffs' members, and similarly situated individuals' rights.

78.     Plaintiffs reasonably fear that Defendants will enforce against them their Orders and Defendants' related policies, practices, and customs.

79.     Institutional Plaintiffs reasonably fear that Defendants will enforce against their members – including Individual Plaintiffs and similarly situated persons – the challenged orders, laws, policies, practices, and customs.

80.     Defendants' laws and ongoing enforcement and threats of enforcement of their respective Orders and directives violate the Second and Fourteenth Amendments.

81.     Defendants' Orders, laws, policies, practices, customs, and ongoing enforcement and threats of enforcement of their various orders and directives against the Plaintiffs, the Plaintiffs' members and customers, and similarly situated members of the public, which prevent the Plaintiffs, Plaintiffs' members, and similarly situated members of the public from exercising their rights, including the

purchase, sale, transfer of, and training with constitutionally protected arms, ammunition, magazines, and appurtenances, are thus causing injury and damage that is actionable under 42 U.S.C. § 1983.

**COUNT TWO**
**DEPRIVATION OF CIVIL RIGHTS**
**RIGHT TO TRAVEL**
**U.S. CONST., ART. IV § 2; AMENDS. V, XIV, 42 U.S.C. § 1983**

82.     Plaintiffs incorporate by reference the foregoing paragraphs as if fully set forth herein.

83.     Article IV, Section 2, Clause 1 of the United States Constitution requires that "[t]he Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." The Privileges and Immunities Clause provides important protections for non-residents who enter the state to obtain employment, or for any other purposes, including the right to travel. *Saenz v. Roe*, 526 U.S. 489, 502 (1999).

84.     The right to freely travel is fundamental; founded on the guarantees of substantive due process under the Fifth and Fourteenth Amendments as it is both implicit in the concept of ordered liberty *and* deeply rooted in this County's history and tradition. "[T]he right of locomotion, the right to remove from one place to another according to inclination, is an attribute of liberty ... secured by the 14th amendment." *Williams v. Fears*, 179 U.S. 270, 274 (1900); *Kent v. Dulles*, 357

U.S. 116 (1958)( "The right to travel is a part of the 'liberty' of which the citizen cannot be deprived without the due process of law under the Fifth Amendment.").

85.    The right to move freely about one's neighborhood or town, even by automobile, is "implicit in the concept of ordered liberty" and "deeply rooted in the Nation's history." *Lutz v. City of York, Pa.*, 899 F.2d 255, 268 (3d Cir. 1990).

86.    It would be meaningless to describe the right to travel between states as a fundamental precept of personal liberty and not to acknowledge a correlative constitutional right to travel within a state.

*King v. New Rochelle Mun. Hous. Auth.*, 442 F.2d 646, 648 (2d Cir. 1971).

87.    The right to travel in a state and between states is especially important when the travel is related to the exercise of other fundamental rights, such as the right to keep and bear arms.

88.    Defendants' laws and ongoing enforcement and threats of enforcement of their various orders and directives against the Plaintiffs, the Plaintiffs' members and customers, and similarly situated members of the public, as well as their ongoing policies and practices are arbitrary and capricious, overbroad, effectively bound-less, fail to provide adequate notice, and place Plaintiffs, Plaintiffs' members and customers, and similarly situated members of the public at risk of serious criminal and civil liability, including arrest, prosecution, loss of rights, fines, and, with respect to the Retailer Plaintiffs, loss of

their licenses. Defendants' orders and actions violate Plaintiffs', Plaintiffs' members, and similarly situated members of the public's right to travel, and are thus causing injury and damage that is actionable under 42 U.S.C. § 1983.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief:

1.     A declaratory judgment that the Defendants' Orders, laws, enforcement policies, practices, customs, and actions individually and collectively: (1) prohibit the operation of firearm and ammunition product manufacturers, retailers, importers, distributors, shooting ranges, and FSC test providers; (2) deny individuals the right and ability to travel to, access, and use firearm and ammunition product retailers, FSC test providers, and shooting ranges to acquire, take possession of, and practice proficiency with constitutionally protected items; (3) deny individuals the right and ability to travel to and from firearm and ammunition product manufacturers, retailers, importers, distributors, shooting ranges, and FSC test providers so that individuals can acquire, taken possession of, and practice proficiency with constitutionally protected items; and (4) violate Art. IV, § 2 of and the Second, Fifth, and Fourteenth Amendments to the United States Constitution;

2.     A preliminary and permanent injunction restraining Defendants and their officers, agents, servants, employees, and all persons in concert or

participation with them who receive notice of the injunction, from enforcing Defendants' Orders and laws, enforcement policies, practices, customs, and actions that individually and collectively: (1) prohibit the operation of firearm and ammunition product manufacturers, retailers, importers, distributors, shooting ranges, and FSC test providers; (2) deny individuals the right and ability to travel to, access, and use firearm and ammunition product retailers, FSC test providers, and shooting ranges to acquire, take possession of, and practice proficiency with constitutionally protected items; (3) deny individuals the right and ability to travel to and from firearm and ammunition product manufacturers, retailers, importers, distributors, shooting ranges, and FSC test providers so that individuals can acquire, taken possession of, and practice proficiency with constitutionally protected items; and (4) violate Art. IV, § 2 of and the Second, Fifth, and Fourteenth Amendments to the United States Constitution;

    3.    Nominal damages[8] against Defendants;

---

[8]   Plaintiffs herein give notice that pre-litigation investigation is continuing in this urgent and expedited matter and that this complaint may be further amended to add additional claims and requests for relief, including but not limited to actual damages, once the facts are more fully developed. Additionally, counsel for the institutional plaintiffs are continuing to investigate the claims of additional potential parties with substantially similar claims who may also suffer constitutional and economic damages as a result of the individual and/or collective orders and/or enforcement actions of Defendants named herein.

4.      All other and further legal and equitable relief, including injunctive relief, against Defendants as necessary to effectuate the Court's judgment, or as the Court otherwise deems just and equitable; and,

5.      Attorney's fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable law.

Respectfully submitted this 14th day of April 2020.

/s/ *Ronda Baldwin-Kennedy*
Ronda Baldwin-Kennedy

/s/ *Raymond DiGuiseppe*
Raymond DiGuiseppe

Attorneys for Plaintiffs