Ronda Baldwin-Kennedy, Esq. (SB #302813)
Jerome A. Clay, Esq. (SB #327175)
**LAW OFFICE OF RONDA BALDWIN-KENNEDY**
5627 Kanan Rd. #614
Agoura Hills, CA 91301
Phone: (951) 268-8977
Fax: (702) 974-0147
Email: ronda@lorbk.com

Raymond M. DiGuiseppe (SB #228457)
**THE DIGUISEPPE LAW FIRM, P.C.**
4320 Southport-Supply Road, Suite 300
Southport, North Carolina 28461
Phone: 910-713-8804
Fax: 910-672-7705
Email: law.rmd@gmail.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONALD MCDOUGALL, *et al*., | Case No. 2:20-cv-02927-CBM |
| Plaintiffs, | **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT** |
| vs. | |
| COUNTY OF VENTURA, CALIFORNIA, *et al*., | Date: June 30, 2020 |
| | Time: 10:00 a.m. |
| Defendants. | Ctrm: 8b |
| | Judge: Hon. Consuelo B. Marshall |
| | Trial: Not Set |
| | Complaint Filed: March 28, 2020 |

i

<u>TABLE OF CONTENTS</u>

**ARGUMENT** ................................................................................................ 1

**I.   Defendants Fail to Recognize and Apply the Applicable Standards** .......... 1

**II.  A Live Justiciable Case Remains with Fully Redressable Claims** ............... 4

    **A.  Controlling Mootness Principles** ............................................... 4

    **B.   The History of Defendants' Orders Violating Second Amendment
        Rights as Supposedly Necessary to Combat COVID-19** ................... 8

    **C.   New Orders of the Same Effect are Likely, and at Any Time** ......... 10

**III. PLAINTIFFS' CASE EASILY PASSES THE LENIENT TEST OF LEGAL
     SUFFICIENCY** ............................................................................. 13

    **A.   The FAC Clearly Alleges the Essential Facts** ................................ 14

    **B.   *Jacobson* is Not the Controlling Framework** ................................ 16

    **C.   The Constitutional Violation is Clear Under a Proper Analysis** ...... 21

**IV.  THIS COURT STILL HAS THE POWER TO GRANT MEANINGFUL AND
     EFFECTIVE RELIEF** ..................................................................... 25

# TABLE OF AUTHORITIES

## CASES

*Adams & Boyle, P.C. v. Slatery*, 2020 WL 1982210 (6th Cir. Apr. 24, 2020) . 17, 21

*American Diabetes Association v. U.S Dept. of the Army*, 938 F.3d 1147 (9th Cir. 2019) ....................................................................................................... 5

*Ashcroft v. ACLU*, 542 U.S. 656 (2004) ................................................. 23

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................... 2

*Association for Los Angeles Deputy Sheriffs v. County of Los Angeles*, 648 F.3d 986 (9th Cir. 2011) ............................................................... 2, 13

*Augustine v. United States*, 704 F.2d 1074 (9th Cir.1983) ..................... 3

*Bauer v. Becerra*, 858 F.3d 1216 (9th Cir. 2017) .................................. 23

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .................................. 2

*Bernhardt v. County of Los Angeles*, 279 F.3d 862 (9th Cir. 2002) ........ 7

*Board of Trustees of Glazing Health and Welfare Trust v. Chambers*, 941 F.3d 1195 (9th Cir. 2019) .......................................................... 6, 9

*Brophy v. Almanzar*, 359 F.Supp.3d 917 (C.D. Cal. 2018) ..................... 4

*California Trucking Association v. Becerra*, 2020 WL 620287 (S.D. Cal. Feb. 2, 2020) ..................................................................................... 13

*Campbell-Ewald Co. v. Gomez*, 136 S.Ct. 663 (2016) ....................... 4, 12

*Chadha v. Immigration and Naturalization Service*, 634 F.2d 408 (9th Cir. 1980) . 9

*Chafin v. Chafin*, 568 U.S. 165 (2013) ................................................... 5

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeh*, 508 U.S. 520 (1993) .... 18

*City of Riverside v. Rivera*, 477 U.S. 561 (1986) ................................... 7

*Conley v. Gibson*, 355 U.S. 41 (1957) .................................................. 13

*Courthouse News Serv. v. Planet*, 750 F.3d 776 (9th Cir. 2014) ........... 2

*Cousins v. Lockyer*, 568 F.3d 1063 (9th Cir. 2009) ........................... 2, 16

*Durst v. Oregon Education Association*, 2020 WL 1545484 (D. Oregon 2020) ...... 5

*Epona LLC v. County of Ventura*, 2019 WL 7940582 (C.D. Cal. 2019) ............. 7, 8

*Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011) ........................ 23

*FEC v. Wisconsin Right To Life, Inc.*, 551 U.S. 449 (2007) .................... 7

iii

*Feldman v. Bomar*, 518 F.3d 637 (9th Cir. 2008) ........................................................ 5

*First Baptist Church v. Kelly*, 2020 WL 1910021 (D. Kan. Apr. 18, 2020) ........... 19

*Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597 (9th Cir. 2018) .................................................................................................................. 15

*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC)*, 528 U.S. 167 (2000) .................................................................................................................. 5

*Geraci v. Homestreet Bank*, 347 F.3d 749 (9th Cir. 2003) ................................... 13

*Jackson v. City and County of San Francisco*, 746 F.3d 953 (9th Cir. 2014) ......... 23

*Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11 (1905) ................. 16, 18

*Koller v. Harris*, 312 F.Supp.3d 814 (N.D. Cal. 2018) ...................................... 7, 9

*Laub v. U.S. Dept. of Interior*, 342 F.3d 1080 (9th Cir. 2003) ................................ 4

*Los Angeles Cty. v. Davis*, 440 U.S. 625 (1979) .................................................... 5

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ............................................ 14

*Maryville Baptist Church, Inc. v. Beshear*, 2020 WL 2111310 (6th Cir. May 2, 2020) .................................................................................................................. 18

*Mayfield v. United States*, 599 F.3d 964 (9th Cir. 2010) ..................................... 25

*McDonald v. City of Chicago*, 561 U.S. 742 (2010) ......................................... 22, 23

*McDowell and Craig v. City of Santa Fe Springs*, 351 P.2d 344 (1960) ............... 21

*Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299 (1986) ................................. 7

*Microsoft Corporation v. United States Dept. of Justice*, 233 F.Supp.3d 887 (W.D. Wash. 2017) ........................................................................................................ 25

*Nampa Classical Academy v. Goesling*, 714 F.Supp.2d 1079 (D. Idaho 2010) ....... 3

*Native Village of Nuiqsut v. Bureau of Land Management*, 2020 WL 113495 (D. Alaska Jan. 9, 2020) .............................................................................................. 5

*Outdoor Media Grp. v. City of Beaumont*, 506 F.3d 895 (9th Cir. 2007) .......... 8, 12

*Phom Lamb v. United States*, 389 F.Supp.3d 669 (N.D. Cal. 2019) ........................ 2

*Planned Parenthood of Greater Washington and North Idaho v. U.S. Department of Health & Human Services*, 946 F.3d 1100 (9th Cir. 2020) .............................. 6

*Pratt v. Hawaii Dept. of Public Safety*, 308 F.Supp.3d 1131 (D. Hawaii 2018) ...... 3

*Reynolds v. Sims*, 377 U.S. 533 (1964) ................................................................. 8

*Roberts v. Corrothers*, 812 F.2d 1173 (9th Cir.1987) ..................................... 3, 13

iv

*Robinson v. Attorney General*, 2020 WL 1952370 (11th Cir. Apr. 23, 2020) ........ 17

*Safe Air for Everyone v. Meyer*, 373 F.3d 1035 (9th Cir. 2004) .............................. 3

*South Bay United Pentecostal v. Newsom*, 2020 WL 2813056 (May 29, 2020) .... 19

*U.S v. Hempfling*, 431 F.Supp.2d 1069 (E.D. Cal. 2006) ....................................... 13

*United States v. Chovan*, 735 F.3d 1127 (9th Cir. 2013) .................................. 22, 23

*Ward v. Rock Against Racism*, 491 U.S. 781 (1989) .............................................. 24

*Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136 (9th Cir. 2003).................. 3

*Winebarger v. Pennsylvania Higher Education Assistance Agency*, 411 F.Supp.3d 1070 (C.D. Cal. 2019).......................................................................................... 3

## OTHER AUTHORITIES

Goston, *Jacobson v. Massachusetts at 100 Years: Police Power and Civil Liberties in Tension*, 95 Am. J. Pub. Health 576 (2005)..................................................... 16

Note, *Toward a Twenty-First Century Jacobson v. Massachusetts*, 121 Harv. L. Rev. 1820 (2008) ..................................................................................................... 16

v

# ARGUMENT

Defendants move to dismiss the First Amended Complaint (FAC) under Rule 12(b)(6) of the Federal Rules of Civil Procedure, on the basis that it "fails to allege sufficient facts to state any cognizable legal claim." Notice of Motion to Dismiss (MTD). Defendants push this motion with two arguments: (1) the case is "moot" under a new set of orders issued after the FAC was filed which, for now they say, "no longer prohibit[] firearm stores from opening, and no longer restrict[] intra-country firearms transactions," MTD at 1, 10; and (2) all orders they have issued, including those that defendants readily admit forced firearms and ammunition retailers to shutter for 48 days – March 20th through May 7th – "pass[] constitutional muster" as "lawful" actions, which in fact did not even "implicate," much less violate, the fundamental constitutional right to keep and bear arms, *id.* at 1.

Nothing is moot, and plaintiffs strongly state redressable claims for relief.[1]

## I.    Defendants Fail to Recognize and Apply the Applicable Standards

At the outset, defendants cite only Rule 12(b)(6) and draw no distinction between the standards applicable to the two different dimensions of their motion – one attacking the jurisdiction of this Court and the other the substance of the claims.

In a motion to dismiss for failure to state a claim under Rule 12(b)(6), "we

---

[1]    In the interest of economy and efficiency, plaintiffs are focusing on their claims for relief specifically concerning the violation of the Second Amendment and, to that end, are dismissing Count Two of the FAC concerning the right to travel.

1

accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Association for Los Angeles Deputy Sheriffs v. County of Los Angeles*, 648 F.3d 986, 990 (9th Cir. 2011) (citations omitted). "The court draws all reasonable inferences in favor of the plaintiff." *Id.* "Although 'conclusory allegations of law and unwarranted inferences are insufficient' to avoid a Rule 12(b)(6) dismissal … a complaint need not contain detailed factual allegations; rather, it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Cousins v. Lockyer*, 568 F.3d 1063, 1067-68 (9th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (internal quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The vehicle for challenging subject matter jurisdiction on mootness grounds, under Rule 12(b)(1), is quite different. "A defendant's Rule 12(b)(1) jurisdictional attack can be either facial or factual." *Phom Lamb v. United States*, 389 F.Supp.3d 669, 679 (N.D. Cal. 2019). "'A 'facial' attack asserts that a complaint's allegations are themselves insufficient to invoke jurisdiction, while a 'factual' attack asserts that the complaint's allegations, though adequate on their face to invoke jurisdiction, are untrue.'" *Id.* (quoting *Courthouse News Serv. v. Planet*, 750 F.3d 776, 780 n.3 (9th Cir. 2014). "Under a facial attack, the court 'accept[s] all allegations of fact in the

2

complaint as true and construe[s] them in the light most favorable to the plaintiffs."' *Id.* (quoting *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003)). In a factual attack, the defendant relies on extrinsic evidence. *Id.* In that case, "the court 'need not presume the truthfulness of the plaintiff's allegations' and 'may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment.'" *Id.* (quoting *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)); *Pratt v. Hawaii Dept. of Public Safety*, 308 F.Supp.3d 1131, 1138 (D. Hawaii 2018) ("On a Rule 12(b)(1) motion to dismiss, the district court is ordinarily free to hear evidence regarding jurisdiction…").

"However, '[t]he relatively expansive standards of a 12(b)(1) motion are not appropriate for determining jurisdiction ... where issues of jurisdiction and substance are intertwined." *Nampa Classical Academy v. Goesling*, 714 F.Supp.2d 1079, 1087 (D. Idaho 2010) (quoting *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir.1987)). "A court may not resolve genuinely disputed facts where 'the question of jurisdiction is dependent on the resolution of factual issues going to the merits.'" *Id.* "In such a case, 'the jurisdictional determination should await a determination of the relevant facts on either a motion going to the merits or at trial.'" *Id.* (quoting *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir.1983)); *accord Winebarger v. Pennsylvania Higher Education Assistance Agency*, 411 F.Supp.3d 1070, 1081 (C.D. Cal. 2019). Indeed, "discovery should ordinarily be granted where pertinent

facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Laub v. U.S. Dept. of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003); *accord Brophy v. Almanzar*, 359 F.Supp.3d 917, 925 (C.D. Cal. 2018). Because defendants rely on extrinsic evidence to support their claim of mootness, the attack is factual in nature. Def. Req. for Jud. Notice (RJN).

## II.   A Live Justiciable Case Remains with Fully Redressable Claims

Defendants attempt to make short shrift of the mootness question itself – devoting a single paragraph based on a single quote from a single case to declare this whole case "entirely moot," MTD at 10-11 – when any proper mootness determination requires an intricate analysis recognizing the well-settled exceptions to the very general rule defendants cite that "when interim relief or events have deprived the court of the ability to redress the party's injuries," *id.* at 10.

### A.   Controlling Mootness Principles

The "case and controversy" requirement of federal court jurisdiction requires "an actual controversy ... be extant at all stages of review, not merely at the time the complaint is filed." *Campbell-Ewald Co. v. Gomez*, 136 S.Ct. 663, 669 (2016) (citation omitted). A case becomes moot, so as to "deprive[] the plaintiff of a personal stake in the outcome of the lawsuit," "only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Gomez* at 669 (citation omitted); *accord Native Village of Nuiqsut v. Bureau of Land Management*, __

4

F.Supp.3d __ 2020 WL 113495, *9 (D. Alaska 2020). "'As long as the parties have a concrete interest, *however small*, in the outcome of the litigation, the case is not moot.'" *Gomez* at 669 (quoting *Chafin v. Chafin*, 568 U.S. 165, 171 (2013)). Generally, the party challenging the court's jurisdiction on such grounds bears the burden of demonstrating mootness, and it is "a heavy one." *Native Village* at *9, n. 103 (quoting *Feldman v. Bomar*, 518 F.3d 637, 642 (9th Cir. 2008)).

Multiple well-recognized exceptions to "mootness" exist. Under one exception, "'voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i.e., does not make the case moot,'" except "where the Court determines that (1) the alleged violation will not recur and (2) 'interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'" *Durst v. Oregon Education Association*, __ F.Supp.3d __, 2020 WL 1545484, *3 (D. Oregon 2020) (quoting *Los Angeles Cty. v. Davis*, 440 U.S. 625, 631 (1979)). If not, "a dismissal for mootness would permit a resumption of the challenged conduct as soon as the case is dismissed." *American Diabetes Association v. U.S Dept. of the Army*, 938 F.3d 1147 (9th Cir. 2019). The burden ordinarily rests on the party claiming mootness. *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC)*, 528 U.S. 167, 189 (2000) (citations omitted) ("The 'heavy burden of persua[ding]' the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness.").

In this context, the Ninth Circuit has held that "a *legislative act* creates a presumption that the action is moot, unless there is a reasonable expectation that the legislative body is likely to enact the same or substantially similar legislation in the future." *Board of Trustees of Glazing Health and Welfare Trust v. Chambers*, 941 F.3d 1195, 1197 (9th Cir. 2019) (italics added). Thus, when the defendant's cessation of the challenged action is the product of such an act, the typical burdens are reversed, as "we should presume that the repeal, amendment, or expiration of legislation will render an action challenging the legislation moot, unless there is a reasonable expectation that the legislative body will reenact the challenged provision or one similar to it." *Id.* at 1199. That said, "[t]he party challenging the presumption of mootness need not show that the enactment of the same or similar legislation is a 'virtual certainty,' only that there is a reasonable expectation of reenactment." *Id.*

Another "justiciability-saving exception is for challenges to injuries that are 'capable of repetition, yet evading review.'" *Planned Parenthood of Greater Washington and North Idaho v. U.S. Department of Health & Human Services*, 946 F.3d 1100 (9th Cir. 2020). This exception to the mootness doctrine "requires (1) the complaining party to reasonably expect to be subject to the same injury again and (2) the injury to be of a type inherently shorter than the duration of litigation." *Id.* at 1109. A party has a reasonable expectation of being "subject to the same injury again" when it reasonably believes "will again be subjected to the

6

alleged illegality' or will be or 'subject to the threat of prosecution' under the challenged law." *Koller v. Harris*, 312 F.Supp.3d 814, 823 (N.D. Cal. 2018) (quoting *FEC v. Wisconsin Right To Life, Inc.*, 551 U.S. 449, 463 (2007)). A canvass of the case law indicates that the Ninth Circuit has not applied a presumption of mootness in the context of challenges to injuries "capable of repetition, yet evading review."

Yet another exception exists for claims seeking nominal damages based on the injury already inflicted during the enforcement of the challenged action. "'Unlike most private tort litigants, a civil rights plaintiff seeks to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms.'" *Bernhardt v. County of Los Angeles*, 279 F.3d 862, 872 (9th Cir. 2002) (quoting *City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986)). "It is well-established that 'the basic purpose' of § 1983 damages is 'to compensate persons for injuries that are caused by the deprivation of constitutional rights.'" *Epona LLC v. County of Ventura*, 2019 WL 7940582, *5 (C.D. Cal. 2019) (quoting *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 307 (1986)). "'By making the deprivation of such rights actionable for nominal damages without proof of actual injury, the law recognizes the importance to organized society that those rights be scrupulously observed." *Bernhardt* at 872.

Thus, "[a]s a general rule, amending or repealing an ordinance will not moot a damages claim because such relief is sought for 'a past violation of [the plaintiff's] rights,'" *Epona* 2019 WL 7940582 at *5 (quoting *Outdoor Media Grp. v. City of*

*Beaumont*, 506 F.3d 895, 902 (9th Cir. 2007)), and "[a] live claim for nominal damages will prevent dismissal for mootness," *Bernhardt*, 279 F.3d at 871.

**B.    The History of Defendants' Orders Violating Second Amendment Rights as Supposedly Necessary to Combat COVID-19**

All these exceptions apply here to vest in this Court continuing jurisdiction over the case despite the later orders beginning May 7th, which no longer prohibit firearms and ammunition transactions within the county but which the County Health Officer retains the power to unilaterally "rescind[], supersede[] or amend[]" at any time. RJN, Ex. 23, p. 9, § 16 (May 7th "Stay Well VC" Order)); *id.* at Ex. 25 (May 20th Order, p. 9, § 16 (containing same proviso)); *id.* at Ex. 26 (May 22nd Order, p. 9, § 16 (same)); *id.* at Ex. 27 (May 29th Order, p. 6, § 11 (same)).

Nothing about these later orders consists of "a legislative act." Like the first round of orders which plaintiffs challenged as unconstitutional, these orders were issued by mere proclamation of the County Health Officer with no voice from or accountability to any of the numerous residents they directly impacted. *See Reynolds v. Sims*, 377 U.S. 533, 565 (1964) (legislatures "should be bodies which are collectively responsive to the popular will"). Rather, the County is imposing its will upon all residents through an exercise of otherwise unchecked executive power, and the same will be true with any and all later orders rescinding, superseding, or amending the orders currently in place when and however the County deems fit. *See*

8

*Chadha v. Immigration and Naturalization Service*, 634 F.2d 408, 431, n. 32 (9th Cir. 1980) ("This emphasizes one danger inherent in departures from the rule of separation of powers: when a governmental power is exercised by a branch other than that ordinarily responsible, the specific guarantees of governmental regularity applicable to the ordinarily responsible branch are in effect short-circuited.").

The installation of the County's new orders by such executive edict cannot give rise a presumption of mootness concerning its previous orders issued in the same way, so as to remove the new orders from the "voluntary cessation" exception. Even so, unquestionably, there exists a "reasonable expectation of reenactment" *Board of Trustees*, 941 F.3d at 1197, and, similarly a reasonable belief that plaintiffs "will again be subjected to the alleged illegality' or will be or 'subject to the threat of prosecution' under the challenged law," *Koller v. Harris*, 312 F.Supp.3d at 823, within the meaning of the "capable of repetition, yet evading review" exception.

Throughout the history of defendants' orders and this ensuing litigation, they have made abundantly clear that they believe sales and transfers of firearms and ammunition – which they know can only be lawfully conducted through a firearms dealer – to be "non-essential" business activity during times of public health crisis. *See* MTD at 1 (stating that the prior orders required closure of all gun stores effective March 20th "because such businesses did not support the ability of people to remain sheltered in their homes to the maximum extent possible"); *id.* at 22 (arguing that

allowing any "non-essential" businesses like gun stores "to remain open would have diminished the effectiveness of the Stay Well at Home Order").

It is also abundantly clear that the asserted basis for these prior orders precluding sales and transfers of firearms and ammunition throughout the county has been that doing so is necessary to combat "the spread of COVID-19 to the maximum extent possible" and "the risk of serious health complications, including death," by limiting the nature and extent of residents' activity outside the home. Def. RJN (filed 5/5/20), Ex. 7, p. 1 (March 17th Order); *id.* at Ex. 12 (March 20th Order), p. 1, § 1 (same); *id.* at Ex. 13 (March 31st Order), p. 1, § 1 (same); *id.* at Ex. 14 (April 9th Order), p. 1, § 1 (same); *id.* at 15, Ex. 15 (April 20th Order), p. 2, § 1 (same).

## C.   New Orders of the Same Effect are Likely, and at Any Time

The same health risks that served as defendants' justification for the prior orders not only still exist, but they are increasing all the time. The statistical data show cases of COVID-19 in Ventura County have steadily been on the rise since the end of March, and that they are now at the highest point ever with over 1,200 cases in the county. Ex. 1[2] (L.A. Times article). In just three days, between May 29th and June 2nd, 74 new cases were reported in the County. Ex. 2 (VC Reporter article).

Cases are also steadily on the rise throughout the State of California, with the

---

[2]     Plaintiffs have filed a request for judicial notice of the exhibits cited herein.

number <u>new</u> daily cases spiking right at 15,000 by the end of May. Ex. 3 (L.A. Times article); Ex. 4 (John Hopkins University). Indeed, Ventura County's next-door neighbor, Los Angeles County, reported 10,000 new cases alone last week. Ex. 4. The total number of cases in the State was almost 123,000 as of June 4, 2020, Ex. 5 (CA Dept. of Public Health,), and the Center for Disease Control's projection models show a continuation of this upward trend, Ex. 6 (CDC). The picture is the same nationally, with the total cases just shy of 2,000,000 as of June 5th, Ex. 7 (CDC), and with the number of infections expected to continue a steady climb, Ex. 8 (CDC).

The CDC has already been warning about a "second wave" of the contagion during this year's upcoming flu season – one likely to be "far more dire because it is likely to coincide with the start of flu season." Ex. 8 (Washington Post). And now, with the nationwide protests, the risk of further spread has exponentially increased just over the last couple weeks. Ex. 10 (UCLA Health, General Internal Medicine & Health Services ("Epidemiological studies show that large, crowded, and loudly expressive events that involve shouting or singing increase the spread of SARS-COV-2, causing COVID-19 outbreaks.")); Ex. 11 (California Heathline ("Newsom Warns California Residents To Brace For Surge Of Cases Following Protests").

Defendants continue to speak of the same concerns themselves: "Ventura County continues to experience a local health emergency that is part of a global pandemic. COVID-19 is highly contagious and potentially deadly." MTD at 22.

11

"COVID-19 presents an imminent and proximate threat to the residents of Ventura County, and it is essential to control the spread of COVID-19 as much as possible..." *Id.* Having clearly demonstrated that they believe all sales and transfers of firearms and ammunition within the county can be precluded in the name of combatting these risks, and having acted on that belief by shutting down all such activity for several weeks already, it is eminently reasonable to expect they will do so again. This is particularly true when defendants have expressly reserved the power to unilaterally "repeal," "supersede," or "amend" their orders at will, and when the COVID-19 statistics on which they previously relied are now substantially *worse*.

Under these circumstances, plaintiffs retain a *substantial* concrete interest in the outcome more than sufficient to preserve this Court's jurisdiction. *Gomez*, 136 S.Ct. at 669 ("As long as the parties have a concrete interest, *however small*, in the outcome of the litigation, the case is not moot."). And, in addition to declaratory relief, plaintiffs have properly pled for nominal damages, FAC at p. 29, in seeking redress of the constitutional injuries already inflicted, something defendants simply cannot avoid by claiming "mootness." *Outdoor Media Grp.*, 506 F.3d at 902.

Moreover, to the extent any question may remain here, it stems from defendants' arguments on the merits contesting factual matters about the actual meaning and effects of the prior orders. *See e.g.,* MTD at 23 (arguing, without any evidence, that allowing gun stores to remain open "would have diminished the

effectiveness of the Stay Well at Home Order"), *id.* at 19 (arguing, again with no evidence, these orders did not "limit the ability of persons to keep or bear arms"). Thus, defendants' jurisdictional attack "is dependent on the resolution of factual issues going to the merits," meaning the question of jurisdiction cannot be resolved without development of further evidence on the factual issues raised by defendants' mootness claim. *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir.1987)).

### III.   Plaintiffs' Case Easily Passes the Lenient Test of Legal Sufficiency

"A Rule 12(b)(6) motion is disfavored and rarely granted." *U.S v. Hempfling*, 431 F.Supp.2d 1069, 1075 (E.D. Cal. 2006). Therefore, "[a] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," *Geraci v. Homestreet Bank*, 347 F.3d 749, 751 (9th Cir. 2003) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)), and "[t]he court draws all reasonable inferences in favor of the plaintiff," *Association for Los Angeles Deputy Sheriffs v. County of Los Angeles*, 648 F.3d at 990. Defendants plow right past these fundamentals and stage their case for dismissal with arguments that rest on the ultimate legal conclusions they hope to draw from a view of the facts favorable to them. Again, the claims need only survive the lenient test of "legal sufficiency." *See California Trucking Association v. Becerra*), __ F.Supp.3d __, 2020 WL 620287 * 3 (S.D. Cal. 2020) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) ("At the

13

pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'").

### A.    The FAC Clearly Alleges the Essential Facts

The proper standards for determining defendants' motion are essential to bear in mind because the FAC repeatedly alleges essential facts which, taken as true, establish plaintiffs' claim under the Second Amendment as more than legally sufficient. Specifically, they assert "[i]n California, individuals are required to purchase and transfer firearms and ammunition through state and federally licensed dealers in face-to-face transactions or face serious criminal penalties." FAC ¶ 3. "Shuttering access to arms, the ammunition required to use those arms, and the ranges and education facilities that individuals need to learn how to safely and competently use arms, necessarily closes off the [Second Amendment] Constitutional right to learn about, practice with, and keep and bear those arms." *Id.* Therefore, "[f]irearm and ammunition product manufacturers, retailers, importers, distributors, and shooting ranges are essential businesses that provide essential access to constitutionally protected fundamental, individual rights." *Id.* at ¶ 2. As a result, "[b]y forcing duly licensed, essential businesses to close or eliminate key services for the general public," defendants' prior orders were "foreclosing the only lawful means to buy, sell, and transfer firearms and ammunition available to typical,

law-abiding individuals in California." *Id.* at ¶ 3; *id.* at ¶¶ 58, 65, 72-76, 81 (same).

Ultimately then, the FAC expressly alleges that defendants' orders "prevent[ed] the

Plaintiffs, Plaintiffs' members, and similarly situated members of the public from

exercising their rights, including the purchase, sale, transfer of, and training with

constitutionally protected arms, ammunition, magazines, and appurtenances, … thus

causing injury and damage that is actionable under 42 U.S.C. § 1983." *Id.* ¶ 81.

      While defendants contest the "essential" nature of such businesses, MTD at 1,

all such "factual disputes are construed in the plaintiff's favor," *Freestream Aircraft*

*(Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 602 (9th Cir. 2018), and defendants

do *not* dispute the fundamental fact that their orders mandated these closures, thereby

cutting off access to all sales of firearms and ammunition within the county

throughout the entire period of March 17th through May 7th – save for the small

window opened on April 20th, *a full month* after the county-wide closure mandate,

for completing a sliver of *firearms* transactions initiated before March 20th.

      All defendants really do is make conclusory assertions about the actual effects

of the prior orders, declaring that they "did nothing to regulate or limit the ability of

persons to keep or bear arms" and thus imposed no burden or at most a "very small"

burden on those rights. MTD at 19, 21. They filter these assertions through overly-

favorable legal standards – with the *Jacobson* framework at the forefront and a

skewed version of intermediate scrutiny as a fallback, *id.* at 11-23 – in advancing

arguments that come up way short of defeating the FAC under the lenient test that it need merely state *plausible* case for relief. *Cousins*, 568 F.3d at 1067-68.

## B.  *Jacobson* is Not the Controlling Framework

The framework of *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11 (1905), simply doesn't fit here. "The fundamental law" of concern there was far removed from the constitutional principles at stake here. The *Jacobson* court considered only an inchoate, non-enumerated liberty interest—"the inherent right of every freeman to care for his own body and health in such way as to him seems best," 197 U.S. at 25—long before the evolution of modern constitutional scrutiny. It effectively applied a rational-basis-like test for *legislatively-enacted* restraints on *general* liberty interests not specifically protected by enumerated fundamental rights. "Supreme Court jurisprudence has progressed markedly from the deferential tone of *Jacobson* and its progressive-era embrace of the social compact." Note, *Toward a Twenty-First Century Jacobson v. Massachusetts*, 121 Harv. L. Rev. 1820 (2008); Goston, *Jacobson v. Massachusetts at 100 Years: Police Power and Civil Liberties in Tension*, 95 Am. J. Pub. Health 576, 580 (2005).

*Jacobson* must be read with its historical limitations in mind. Its approach to evaluating a democratically enacted, acutely focused public health rule affecting a general interest is not a replacement for modern constitutional analysis. When a specific constitutional right is at stake, that right's mode of scrutiny applies. The

16

Sixth Circuit just recognized this in *Adams & Boyle, P.C. v. Slatery*, ___ F.3d ___, 2020 WL 1982210 (6th Cir. Apr. 24, 2020). There, the district court issued a preliminary injunction against a governor's COVID-19 order temporarily banning certain types of abortions as "elective" surgeries. Upholding the injunction, the Sixth Circuit cautioned that "[a]ffording flexibility [] is not the same as abdicating responsibility, especially when well-established constitutional rights are at stake…" 2020 WL 1982210 at *1. It was the nature of the specific constitutional right at stake that drove the analysis. The court held that, "bottom line … even accepting *Jacobson* at face value, it does not substantially alter our reasoning here" because "[a]s of today, a woman's right to a pre-viability abortion is a part of 'the fundamental law.'" *Id.* at *9. It would "not countenance …the notion that COVID-19 has somehow demoted *Roe* and *Casey* to second-class rights, enforceable against only the most extreme and outlandish violations." *Id.* at *10. "Such a notion is incompatible not only with *Jacobson*, but also with American constitutional law writ large." *Id.*

Similarly, in *Robinson v. Attorney General*, ___ F.3d ___, 2020 WL 1952370 (11th Cir. Apr. 23, 2020), Alabama's attempt to wield the *Jacobson* case as somehow dispositive in support of its COVID-19 driven restriction on abortions was rejected. The Eleventh Circuit held that *Jacobson* could not be used to supplant other cases applying the specific constitutional rights at stake and the framework for protecting that right as defined throughout the decades of jurisprudence since *Jacobson*. *Id.* at

17

*8. Notably, the Court specifically employed the modern *Roe-Casey* framework to conclude that Alabama's COVID-19 order "impinge[d] the right to an abortion" in a "plain, palpable" fashion as contemplated by *Jacobson*. *Id.*

To further illustrate, in *Maryville Baptist Church, Inc. v. Beshear*, ___ F.3d ___, 2020 WL 2111310 (6th Cir. May 2, 2020), the Sixth Circuit reversed the denial of a TRO enjoining a governor's orders and enforcement actions shutting down worship services, regardless whether they met or exceeded social distancing and hygiene guidelines for permitted non-religious activities during the COVID-19 pandemic. The Sixth Circuit found that the government's orders and actions likely prohibited the free exercise of religion in violation of the First and Fourteenth Amendments, especially with respect to drive-in services. 2020 WL 211310 at *2. Again, what drove the analysis was the nature of the specific constitutional right at stake scrutinized in the manner required under Supreme Court precedents since the time of *Jacobson*. *Id.* at *3 (citing *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeh*, 508 U.S. 520, 553 (1993) (applying the rule that "a law that discriminates against religious practices will usually be invalidated unless the law 'is justified by a compelling interest and is narrowly tailored to advance that interest'"). The Sixth Circuit cited *Jacobson* merely as a historical reference for purposes of recognizing the governor was well-intentioned in doing his best to lessen the spread of the virus, *id.* at * 4, but the orders were ultimately adjudged under strict scrutiny according to

18

the nature of the right at stake—not any lesser form akin to rational basis.

And in *First Baptist Church v. Kelly*, ___ F.3d.Supp ___, 2020 WL 1910021 (D. Kan. Apr. 18, 2020), the district court ruled that *Jacobson* "d[id] not provide the best framework in which to evaluate the governor's executive orders" restricting First Amendment free exercise rights in response to COVID-19. Instead, the court applied the modern-day jurisprudence on free exercise rights as the proper framework for reviewing the orders' constitutionality. 2020 WL 1910021 at *6.

While defendants make much of Justice Roberts's concurring opinion in the denial of an application for injunctive relief in *South Bay United Pentecostal v. Newsom* 590 U.S. __, 2020 WL 2813056, that case is distinguishable. First, it concerned merely a *capacity limit* on the number of attendees for religious services otherwise generally *permitted*. *Id.* at *1. Had the orders at issue just reduced the capacity or number of daily transactions within retailers of firearms and ammunition, we might have a comparison. But the orders *completely denied* access to, and any lawful transactions involving, firearms and ammunition throughout the county. Second, while a *capacity limitation* on an otherwise *permissible* activity may be entitled to judicial deference because one could conceivably conclude that the state officials did not exceed the bounds of their state statutory powers, *id.* at *2, a

19

complete preclusion of constitutionally protected activity is a very different story.[3]

Further, having imposed this complete preclusion without any showing of, or apparently any effort to investigate, less restrictive alternatives, defendants' actions simply cannot be fairly attributed the sort of presumed "competence" and "expertise" in "assess[ing] public health" for which *Jacobson-like* deference is reserved. *Id.* at *1 (granting such deference to the church capacity limitation). Indeed, defendants have supplied no evidence at all for their claim that their prior orders were intended to be, or truly were, "specific" and "tailored" to minimize the extent of unnecessary or unreasonable impact upon the fundamental rights at stake. MTD at 13-14.

Lastly, one cannot ignore the scathing dissent of Justice Kavanaugh, joined by three other justices, who took California to task even over this limited capacity restriction on religious gatherings, holding the state to strict scrutiny and concluding the action was unsupported by any compelling justification for the restriction. *South Bay*, 2020 WL 2813056 at *2-3 (Kavanaugh, J., dissenting). If four of the five justices of the Supreme Court would strike down this much more limited restriction *partially* impinging upon First Amendment rights, it is quite conceivable, if not

---

[3]     While defendants seek to enhance the degree of substantial deference to which they are supposedly entitled by citing state statutory provisions permitting county officials to institute preventative measures "necessary" to protect public health, MTD at 13, n. 10, this is obviously a federal action in which the propriety of their actions must be adjudged and resolved under the United States Constitution.

likely, that at least a simple majority would strike down the orders at issue here given their effect of having completely denied access to the exercise of fundamental rights protected under the Second Amendment. And, again, the case is distinguishable and thus not controlling. *McDowell and Craig v. City of Santa Fe Springs*, 54 Cal. 2d 33, 38, 4 Cal. Rptr. 176, 351 P.2d 344 (1960) ("It is elementary that the language used in any opinion is to be understood in the light of the facts and the issue then before the court. Further, cases are not authority for propositions not considered.").

Defendants cannot escape true constitutional scrutiny. Just as we cannot "countenance …the notion that COVID-19 has somehow demoted *Roe* and *Casey* to second-class rights, enforceable against only the most extreme and outlandish violations," *Adams & Boyle*, 2020 WL 1982210 at *10, we cannot countenance a rule granting defendants the power to demote the rights at stake here by suspending over a century of Supreme Court jurisprudence to facilitate their policy preferences in blocking the exercise of fundamental rights under the Second Amendment.

## C.     The Constitutional Violation is Clear Under a Proper Analysis

So the question is not, as Defendants say, whether their policies and practices are "beyond all question, a plain, palpable invasion of rights secured by" inchoate notions of "fundamental law" untethered from the individual rights at stake. MTD at 12. The Supreme Court has made clear the Framers and ratifiers of the Fourteenth Amendment counted the right to keep and bear arms as among those fundamental

21

rights *necessary* (i.e., essential) to our system of ordered liberty, *McDonald v. City of Chicago*, 561 U.S. 742, 778, 791 (2010), and as a privilege and immunity of citizenship, *id*. at 805 (Thomas, J., concurring). Even under the Ninth Circuit's two-step test, when a regulation burdens Second Amendment rights, *Heller* requires it must reject rational basis review "and conclude that some sort of heightened scrutiny must apply." *United States v. Chovan*, 735 F.3d 1127, 1136-37 (9th Cir. 2013) (citing *District of Columbia v. Heller*, 554 U.S. 570, 628, n. 27 (2008)). The notion that the prior orders did not "implicate" these rights, or did no more than impose a miniscule burden, is just plain absurd. Again, defendants readily concede the fundamental fact repeatedly asserted in the FAC that they forced the complete closure of firearms retailers, and with that imposed a complete preclusion against all sales and transfers of firearms throughout the entire county for almost *seven weeks* (48 days).[4]

Defendants' orders struck at the heart of every right enshrined in the Second Amendment – the right to "keep," "bear," "use," "possess," and "carry" for self-

---

[4]    That residents were allowed to complete firearms transactions initiated before March 20th does not change the matrix. This narrow exception applied only for that small segment of transactions and made no exception for any ammunition. Plus, the exception certainly did not negate the claims of Plaintiff McDougall, as defendants spin it. MTD at 14. He was still barred from obtaining any ammunition throughout, and he was also barred throughout from retrieving his firearm in the possession of a gunsmith, since there was no exception for accessing gunsmiths. And Plaintiff Garcia was barred from obtaining any firearms or ammunition throughout the whole period because she had not initiated a firearms purchase before March 20th.

22

defense in the home, in case of confrontation, and for other lawful purposes, and of course, the corresponding right to obtain the ammunition required to actually use them for these protected purposes. *See Heller*, 554 U.S. at 592, 635; *McDonald*, 561 U.S. at 767; *Jackson v. City and County of San Francisco*, 746 F.3d 953, 968 (9th Cir. 2014); *Ezell v. City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011). Further, by forcing residents to "shelter in place" and precluding all travel except to engage in "*essential* activities" and patronize "*essential* businesses" – which clearly did *not* include any travel for purposes of acquiring firearms or ammunition – the prior orders imposed the additional burdens of restraining residents' right to travel as necessary to exercise the panoply of rights enshrined in the Second Amendment.

Such infringements "fail constitutional muster" "[u]nder any of the standards of scrutiny the Court has applied to enumerated constitutional rights." *Heller* at 571. And, even assuming traditional scrutiny, a "law that implicates the core of the Second Amendment right and severely burdens that right"—like defendants' prior orders here—"warrants strict scrutiny." *Bauer v. Becerra*, 858 F.3d 1216, 1222 (9th Cir. 2017) (quoting *United States v. Chovan*, 735 F.3d at 1138)).

Even intermediate scrutiny demands that the government bear the burden of proving less restrictive alternatives do not exist or would be inadequate. *Ashcroft v. ACLU*, 542 U.S. 656, 669 (2004). "It is not enough for the Government to show that [its chosen action] has some effect." *Id.* It must prove that any substantially less

23

restrictive alternatives would be less effective or ineffective. *Id.* It must show, and the court must find, "the means chosen are not substantially broader than necessary to achieve the government's interest." *Ward v. Rock Against Racism*, 491 U.S. 781, 800 (1989). Here, defendants have made absolutely no effort to demonstrate they even *considered* less restrictive alternatives, much less that any such alternatives would be ineffective or inadequate. Similarly, they fail to claim they even *considered* less restrictive alternatives, much less that any evidence *exists* that would support this *total ban* as necessary, or even useful, in promoting the generic public interest supposedly being pursued. Instead, they entirely bypass the topic, resting their case chiefly on the notion that their orders are "presumptively lawful regulatory measures" subject to virtually total deference under *Jacobson*. [5]

By closing off all sales of and access to firearms and ammunition—with no justification for doing so while authorizing the operation of numerous other retailers whose businesses involve substantially more foot traffic and interaction among people—Defendants have made an impermissible policy choice. *See Heller*, 554 U.S. at 636 ("the enshrinement of constitutional rights necessarily takes certain

---

[5] Defendants' further attempt to diminish the impact here by claiming it is no more burdensome than the usual delays people face, MTD at 17-19, is also absurd. The waiting period only applies to firearm transactions (not ammunition). Further, *because* a background check and waiting period are *already* imposed by the State, defendants' criminalizing conduct required to even start the process unquestionably imposes a significant and severe *additional* burden on the core rights at stake.

policy choices off the table"). Plaintiffs have stated a "plausible" case for relief.

**IV. This Court Still Has the Power to Grant Meaningful and Effective Relief**

In addition to their claim for nominal damages, plaintiffs' claim for declaratory remains redressable notwithstanding that the prior orders at issue are no longer in effect. "'In the context of declaratory relief, a plaintiff demonstrates redressability if the court's statement would require the defendant to act in any way that would redress past injuries or prevent future harm.'" *Microsoft Corporation v. United States Dept. of Justice*, 233 F.Supp.3d 887, 903 (W.D. Wash. 2017) (citations omitted). "A plaintiff is entitled to a presumption of redressability where he 'seeks declaratory relief against the type of government action that indisputably caused him injury.'" *Id.* (quoting *Mayfield v. United States*, 599 F.3d 964, 971 (9th Cir. 2010)).

Here, given the clear existence of past injury and "reasonable expectation" – indeed true likelihood – that defendants will reimpose similar orders as COVID-19 continues to pose the same risks they claim necessitated such orders, the declaratory relief plaintiffs seek would both redress past injury and prevent future harm. Defendants' motion to dismiss should be denied and this case allowed to proceed.

Dated: June 9, 2020

/s/ *Ronda Baldwin-Kennedy*
Ronda Baldwin-Kennedy

/s/ *Raymond DiGuiseppe*
Raymond DiGuiseppe
Attorneys for Plaintiffs

25