UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONALD MCDOUGALL, ET AL., <br>     Plaintiffs, <br> vs. <br> COUNTY OF VENTURA, CALIFORNIA, ET AL., <br>     Defendants. | Case No.: 2:20-cv-02927-CBM-AS <br><br> **ORDER RE: MOTION TO DISMISS CASE (DKT. NO. 42)** |

The matter before the Court is Defendants County of Ventura, William Ayub, Dr. Robert Levin, and William T. Foley's (collectively, "Defendants") motion to dismiss the first amended complaint ("FAC").[1]  (*See* Dkt. No. 42.) Plaintiffs Donald McDougall, Juliana Garcia, Second Amendment Foundation, California Gun Rights Foundation, and Firearms Policy Coalition (collectively, "Plaintiffs") oppose the Motion.  (*See* Dkt. No. 43 ("Opp.").)

Also pending before the Court are Defendants' Request for Judicial Notice with Exhibits ("Defendants' RJN"), Plaintiffs' Request for Judicial Notice In Support of Plaintiffs' Opposition ("Plaintiffs' RJN"), and Defendants' Supplemental Request for Judicial Notice with Exhibit 1 ("Defendants'

---

[1] Hereinafter referred to as the "Motion."

1

Supplemental RJN"). (*See* Dkt. No. 42-1 (Defendants' RJN), 44 (Plaintiffs' RJN), 45-1 (Defendants' Supplemental RJN).)

# I. BACKGROUND

## A. Factual Background

This is an action under 42 U.S.C. § 1983 for one count of violation of the Second Amendment.[2] (*See* Dkt. No. 19 (FAC).) As of June 1, 2020, the novel coronavirus, COVID-19, has infected 1,787,680 people and killed 104,396 people across the nation. (Defendants' RJN at Ex. 2, p.1.) "Because people may be infected but asymptotic, they may unwittingly infect others." *S. Bay Pentecostal Church v. Newsom*, ---- U.S. ----, 140 S.Ct. 1613 (2020) (mem.) (Roberts, C.J., Concurring). The COVID-19 pandemic "has thrust humankind into an unprecedented global public health crisis." *Altman v. County of Santa Clara*, No. 20-cv-02180-JST, 2020 WL 2850291, at *1 (N.D. Cal. June 20, 2020) (citation omitted).

On or about March 4, 2020, Governor Gavin Newsom proclaimed a state of emergency in California due to COVID-19. (FAC at ¶ 34.) Beginning on March 17, 2020, defendant Dr. Robert Levin ("Levin"), the Ventura County Health Officer, issued a series of "stay well at home" orders on behalf of defendant County of Ventura (the "County"). (FAC at ¶¶ 50-53.) The stay well at home orders generally required individuals living within the County to stay at their places of residence and cease business activities, but exempted certain "essential businesses" from those prohibitions. Although the scope of the stay well at home orders varied as the County amended the order, it is undisputed that firearms retailers were not deemed "essential businesses" and were therefore mandated to

---

[2] Plaintiffs assert a violation of the "Right to Travel" as Count II of the FAC. (FAC at ¶¶ 82-88.) In their Opposition, Plaintiffs dismiss Count II "[i]n the interest of economy and efficiency." (Opp. at p. 1, n.1.) Therefore, the Court considers only Count I in this order.

1  be closed from at least March 20, 2020 to May 7, 2020. (*See* Dkt. No. 45 (Reply)
2  at p. 4:9-17.)
3        Plaintiffs Donald McDougall ("McDougall") and Juliana Garcia ("Garcia")
4  are residents of the County. (FAC at ¶¶ 7-8.) McDougall purchased a firearm
5  from a licensed firearm dealer and left another firearm with a licensed gunsmith,
6  but was unable to retrieve those firearms or acquire ammunition due to the stay
7  well at home orders. (*Id.* at ¶ 59.) Garcia desired to purchase a firearm and
8  ammunition, but was unable to acquire a Firearm Safety Certificate ("FSC") or
9  purchase a firearm and ammunition due to the stay well at home orders. (*Id.* at ¶
10 lers and ranges noecond Amendment Foundation, Inc. ("SAF"), California Gun
11 Rights Foundation ("CGF"), and Firearms Policy Coalition, Inc. ("FPC")
12 (collectively, the "Institutional Plaintiffs") are nonprofit organizations whose
13 members in the County were affected by the stay well at home orders. (*Id.* at ¶¶ 9-
14 11.)
15       The FAC alleges the Defendants violated Plaintiffs' rights under the Second
16 Amendment because the issuance and enforcement of the stay well at home orders
17 prevented McDougall, Garcia, and members of the Institutional Plaintiffs from
18 buying, selling, and transferring firearms and ammunition, and as well as training
19 with firearms at firing ranges ("Count I"). (FAC at ¶¶ 65-66, 81.) Plaintiffs seek
20 declaratory relief, injunctive relief, and nominal damages against Defendants.
21 (FAC at Prayer for Relief.)
22 **B.    Procedural Background**
23       The complaint was filed on March 28, 2020. (*See* Dkt. No. 1.) McDougall
24 applied for an *ex parte* temporary restraining order on March 30, 2020 (*see* Dkt.
25 No. 8, 9), which the Court denied on April 1, 2020. (*See* Dkt. No. 12.) In that
26 order, the Court held McDougall was not entitled to a temporary restraining order
27 because his Second Amendment claim was unlikely to succeed on the merits under
28 intermediate scrutiny. (*Id.*) On April 14, 2020, Plaintiffs filed the FAC, which

added additional plaintiffs and a cause of action for violation of the right to travel. (Dkt. No. 20.) Plaintiffs filed a second *ex parte* application for a temporary restraining order on April 24, 2020 (*see* Dkt. No. 27), which the Court denied on April 30, 2020. (*See* Dkt. No. 30.) The Court set Plaintiffs' request for an order to show cause why a preliminary injunction should not issue for hearing on May 19, 2020. (Dkt. No. 35.) After receiving and considering briefs from both parties, Plaintiffs withdrew the motion for preliminary injunction on May 18, 2020. (Dkt. No. 40.)

## II. JURISDICTION

The Court has jurisdiction over this action under 28 U.S.C. § 1331.

## III. LEGAL STANDARD

### A.   Fed. R. Civ. P. 12(b)(6)

Rule 12(b)(6) allows a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 663 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). All well-pleaded facts are taken as true, with all reasonable inferences in favor of the plaintiff. *Twombly*, 550 U.S. at 570. Labels, conclusions, or formulaic recitation of the elements of a cause of action will not suffice. *Twombly*, 550 U.S. at 555. A complaint must state "evidentiary facts which, if true, will prove [the claim]." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008).

### B.   Fed. R. Civ. P. 12(b)(1)[3]

The Court may dismiss a complaint for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). The plaintiff has the burden to establish that subject

---

[3] Defendants did not move to dismiss the FAC under Rule 12(b)(1) in this Motion. Defendants concede, however, that their challenge based on mootness arises under Rule 12(b)(1). Defendants argue in the Reply that the Court should consider the mootness arguments because "Plaintiffs suffer no prejudice for Defendants' inadvertent error in omitted 12(b)(1) as a basis for

matter jurisdiction is proper. *See Ass'n of Am. Med. Colls. v. United States*, 217 F.3d 770, 778-779 (9th Cir. 2000). To meet this burden, the plaintiff must show "affirmatively and distinctly the existence of whatever is essential to federal jurisdiction." *Tosco Corp. v. Cmtys. for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001), *overruled on other grounds*, *Hertz Corp. v. Friend*, 559 U.S. 77, 82 (2010). A motion to dismiss for lack of subject matter jurisdiction may be a facial attack, where the allegations of the complaint are insufficient on their face to invoke federal jurisdiction, or a factual attack, where "the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004) (citation and quotation marks omitted).

## IV. DISCUSSION

### A. Requests for Judicial Notice

"The court may judicially notice a fact that is not subject to reasonable dispute because it (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The Court may take judicial notice of a document that is a government publication and a matter of public record. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

Defendants' RJN requests judicial notice of orders of various federal courts (Ex. 1, 4, 28), publications from state and federal agencies (Ex. 2, 3, 9-14, 16-27), scientific publications (Ex. 5-8), and a newspaper article (Ex. 15). (*See* Dkt. No. 42-1 (Defendants' RJN) at p. 2:3-5:7.) Here, the publications from state and federal agencies are matters of public record that are not subject to reasonable dispute. *See U.S. ex rel. Modglin v. DJO Global Inc.*, 48 F.Supp.3d 1362, 1381

---

dismissal in their notice of motion" because Plaintiffs fully briefed the mootness argument in their Opposition. (Reply at p.2, n.1.) The Court considers the motion to dismiss under Rule 12(b)(1).

5

1  (C.D. Cal. 2014) ("Under Rule 201, the court can take judicial notice of '[p]ublic
2  records and government documents available from reliable sources on the
3  Internet,' such as websites run by governmental agencies."). Moreover, this Court
4  may consider the opinions of other federal courts without reliance on the doctrine
5  of judicial notice. In contrast, Defendants provide no authority for this Court to
6  take judicial notice of the truth of newspaper articles and scientific publications.
7  "This is because often, the accuracy of information in newspaper articles and press
8  releases cannot be readily determined and/or can be reasonably questioned."
9  *Gerritsen v. Warner Bros. Entertainment Inc.*, 112 F.Supp.3d 1011, 1028 (C.D.
10 Cal. 2015). Therefore, the Court **GRANTS** Defendants' RJN as to Exhibits 2, 3,
11 9-14, and 16-27, but **DENIES** the request for judicial notice as to Exhibits 1, 4, 5-
12 8, and 28.
13         Plaintiffs' RJN requests judicial notice of newspaper articles and
14 publications (Ex. 1-4, 9-11), and publications from state and federal agencies (Ex.
15 5-8). (*See* Dkt. No. 44 (Plaintiffs' RJN) at p. 1:25-3:11.) As explained above,
16 publications from state and federal agencies are matters of public record that are
17 not subject to reasonable dispute. *See DJO Global Inc.*, 48 F.Supp.3d at 1381.
18 Therefore, the Court **GRANTS** Plaintiffs' RJN as to Exhibits 5-8. In contrast, the
19 Court **DENIES** the request for judicial notice related to the truth of newspaper
20 articles and publications contained in Ex. 1-4, 9-11. *See Gerritsen*, 112 F.Supp.3d
21 at 1028 ("The cases in which courts take judicial notice of newspaper articles and
22 press releases, however, are limited to a narrow set of circumstances not at issue
23 here – e.g., in securities cases for the purpose of showing that particular
24 information was available to the stock market.").
25         Defendants' Supplemental RJN asks the Court to take judicial notice of an
26 order of the Ventura County Health Officer, dated June 11, 2020. (Dkt. No. 45-1
27 (Defendants' Supplemental RJN) at Ex. 1.) Because this a publication from a
28

state government and a matter of public record, the Court **GRANTS** Defendants' Supplemental RJN.

### B. Motion to Dismiss

#### 1. Mootness

"Mootness is a jurisdictional issue, and federal courts have no jurisdiction to hear a case that is moot, that is, where no actual or live controversy exists." *MetroPCS Cal., LLC v. Picker*, 970 F.3d 1106, 1115-1116 (9th Cir. 2020) (citations and quotation marks omitted). "When 'there is no longer a possibility that [a party] can obtain relief for [its] claim, that claim is moot.'" *Id.* at 1116 (quoting *Ruvalcaba v. City of Los Angeles*, 167 F.3d 514, 521 (9th Cir. 1999)) (brackets in original).

Defendants move to dismiss Count I under Fed. R. Civ. P. 12(b)(1), arguing the Second Amendment claim became moot as to all Plaintiffs on May 7, 2020, when the County amended the stay well at home order such that it "no longer prohibits firearm stores from opening." (Mot. at p. 10:18-20.) Moreover, Defendants argue McDougall's claim became moot on April 20, 2020, when the stay well at home order "was amended to expressly allow gun purchasers ... to complete the purchases of firearms." (*Id.* at p. 10:20-21.)

The stay well at home order dated April 20, 2020 ("April 20 County Order") required the closure of all non-essential businesses in the County. (Defendants' RJN, Ex. 20 at ¶ 7.) The list of essential businesses in the April 20 County Order did not include firearm retailers, ammunition retailers, or firing ranges. (*Id.* at ¶ 17(e).) The April 20 County Order made a "[s]pecial allowance for completion of firearm sales," whereby individuals "who initiated the purchase of a firearm at a store located within the County before March 20, 2020 (i.e., the day firearm stores were ordered to be closed by the Health Officer)" were permitted to acquire the firearm at the retailer. (*Id.* at ¶ 11.) McDougall purchased a firearm sometime before the issuance of the stay well at home orders, and that firearm was in the

possession of a firearm dealer. (FAC at ¶ 59.) Therefore, McDougall was permitted to retrieve that firearm under the April 20 County Order.[4]

The stay well at home order dated May 7, 2020 was expressly made no more restrictive than the State Stay at Home Order and permitted "[o]nly retail businesses whose primary line of business qualifies as critical infrastructure under the State Stay at Home Order" to be fully open to the public. (Defendants' RJN, Ex. 23 at ¶ 8.)

"As a general rule, amending or repealing an ordinance will not moot a damages claim because such relief is sought for 'a past violation of [the plaintiff's] rights.'" *Epona LLC v. County of Ventura*, No. CV 16-6372, 2019 WL 7940582, at *5 (C.D. Cal. Dec. 12, 2019) (quoting *Outdoor Media Grp. v. City of Beaumont*, 506 F.3d 985, 902 (9th Cir. 2007)). Here, in addition to declaratory and injunctive relief, Plaintiffs seek nominal damages. Nominal damages are available to remedy a constitutional violation, even if "actual provable injury" has not occurred. *Id.* (citing *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 307 (1986)). Thus, even if Defendants are correct that Plaintiffs could purchase firearms, ammunition, and visit firing ranges at least by May 7, 2020, Defendants do not dispute that there was a period of time during which the stay well at home orders prohibited those activities. Assuming such actions by the Defendants violated the Second Amendment (discussed below), Plaintiffs would be entitled to nominal damages. Therefore, there is a possibility that Plaintiffs can obtain relief for their claim, and the claim is not moot.[5] See *MetroPCS Cal., LLC*, 970 F.3d at 1116.

---

[4] Defendants do not address whether McDougall could retrieve another firearm he owned that was left with a gunsmith consistent with the April 20 County Order, nor do Defendants address whether McDougall could practice at a firing range or purchase ammunition within the County.

[5] In the Reply, Defendants argue that "Plaintiffs are not entitled to damages from any of the named government officials, nominal or otherwise, under the doctrine of qualified immunity." (Dkt. No. 45 (Reply) at p. 10:26-28.) This argument is raised for the first time in the Reply. Moreover, Plaintiffs bring claims against the named government officials in their official capacity, such that qualified immunity would not be available. See *Comm. House, Inc. v. City of Boise*, 623 F.3d 945, 965 (9th Cir. 2010) ("Qualified immunity, however, is a defense available

8

## 2. Merits of the Second Amendment Claim

The parties contest the standard of review for the Second Amendment claim. Defendants argue the framework set out in *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11, 30-31 (1905) should apply, while Plaintiffs rely on tiered scrutiny, *see, e.g., U.S. v. Chovan*, 735 F.3d 1127, 1136 (9th Cir. 2013).

### a. *Jacobson* applies to the Second Amendment claim in this case

*Jacobson* involved a constitutional challenge to a state law and a rule promulgated by the board of health of Cambridge, Massachusetts, which required inhabitants of the city to be vaccinated against smallpox. *Jacobson*, 197 U.S. at 12-13. The United States Supreme Court reasoned that to hold in favor of the plaintiff "would practically strip the legislative department of its function to care for the public health and the public safety when endangered by epidemics of disease." *Id.* at 37. Under the *Jacobson* framework, judicial review of constitutional challenges to emergency measures taken by the state during a public health crisis is narrow:

> If there is any such power in the judiciary to review legislative action in respect of a matter affecting the general welfare, it can only be when that which the legislature has done comes within the rule that, if a statute purporting to have been enacted to protect the public health, the public morals, or the public safety, has no real or substantial relation to those objects, or is, beyond all question, a plain, palpable invasion of rights secured by the fundamental law, it is the duty of the courts to so adjudge, and thereby give effect to the Constitution.

*Id.* at 31. The *Jacobson* Court emphasized that the manner in which the state decides to combat an epidemic is entitled to deference. *See id.* at 30 ("It is no part of the function of a court or a jury to determine which one of two modes was likely to be the most effective for the protection of the public against disease.").

---

only to government officials sued in their individual capacities. It is *not* available to those sued only in their official capacities.").

More recently, federal courts have relied on *Jacobson* in cases bringing constitutional challenges to state and local orders aimed at curbing the spread of COVID-19. In *S. Bay United Pentecostal Church*, 140 S.Ct. at 1613-1614, a plurality of the United States Supreme Court denied an injunction brought on First Amendment grounds against an Executive Order of the Governor of California which "limit[ed] attendance at places of worship to 25% of building capacity or a maximum of 100 attendees." Although four justices dissented, Chief Justice Roberts authored an opinion concurring with the four-justice majority. Amongst other things, the Chief Justice wrote:

> The precise question of when restrictions on particular social activities should be lifted during the pandemic is a dynamic and fact-intensive matter subject to reasonable disagreement. Our Constitution principally entrusts "[t]he safety and the health of the people" to the politically accountable officials of the States to "guard and protect." *Jacobson v. Massachusetts*, 197 U.S. 11, 38, 25 S.Ct. 358, 49 L.Ed. 643 (1905). When those officials "undertake[ ] to act in areas fraught with medical and scientific uncertainties," their latitude "must be especially broad." *Marshall v. United States*, 414 U.S. 417, 427, 94 S.Ct. 700, 38 L.Ed.2d 618 (1974). Where those broad limits are not exceeded, they should not be subject to second-guessing by an "unelected federal judiciary," which lacks the background, competence, and expertise to assess public health and is not accountable to the people. *See Garcia v. San Antonio Metropolitan Transit Authority*, 469 U.S. 528, 545, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985).

*S. Bay United Pentecostal Church*, 140 S.Ct. at 1613-1614. Although the Ninth Circuit has not directly addressed the standard of review for constitutional claims challenging health orders during a pandemic, other circuit courts have applied the *Jacobson* framework in that context. *See, e.g., Adams & Boyle, P.C. v. Slatery*, 956 F.3d 913, 925-27 (6th Cir. 2020) (affirming preliminary injunction of Tennessee emergency order halting procedural abortions); *In re Abbott*, 954 F.3d 772, 783-788 (5th Cir. 2020) (granting writ of mandamus directing vacatur of temporary restraining order of Texas emergency order halting abortions);

*Robinson v. Attorney General*, 957 F.3d 1171, 1179-80 (11th Cir. 2020); *In re Rutledge*, 956 F.3d 1018, 1028 (8th Cir. 2020) (holding district court erred by not using *Jacobson* to evaluate Arkansas abortion restrictions).

      Defendants argue that *Jacobson* "must be read with its historical limitations in mind," as it was decided "long before the evolution of modern constitutional scrutiny." (Opp. at p. 16.) This argument is unavailing because the weight of authority from both the United States Supreme Court and Circuits indicates the *Jacobson* framework is valid authority. Defendants next argue the *Jacobson* framework applies to "*legislative-enacted* restraints on *general* liberty interests not specifically protected by enumerated fundamental rights." (Opp. at 16 (italics in original).) The Court rejects that argument on two grounds. First, the Supreme Court in *Jacobson* considered a challenge to state law *and* a regulation promulgated by the local board of health, so its holding is not limited to "legislatively-enacted restraints." *Jacobson*, 197 U.S. at 12-13. Second, the holding of *Jacobson* is not limited to "general liberty interests" as opposed to "enumerated fundamental rights," nor do Defendants point to language from *Jacobson* supporting such an interpretation. Indeed, the United States Supreme Court framed its holding in *Jacobson* broadly, reasoning "the liberty secured by the Constitution of the United States to every person within its jurisdiction does not import an absolute right in each person to be, at all times and in all circumstances, wholly freed from restraint." *Id.* at 26.

      Because this case involves a constitutional challenge to a health order promulgated by the County in response to a nationwide public health crisis, the Court applies *Jacobson* to determine whether the stay well at home orders violated the Second Amendment.

      b.     **The Stay Well at Home Orders Are Consistent with *Jacobson***

Under the standard of review set forth in *Jacobson*, the Court must determine (1) whether the County's orders "ha[ve] no real or substantial relation" to the County's objective of preventing the spread of COVID-19; or (2) whether the County of Ventura's orders affect "beyond all question, a plain, palpable invasion of rights secured by" the Constitution. *Jacobson*, 197 U.S. at 31. The stay well at home orders meet the first test under *Jacobson*. The stated objective of the stay well at home orders "is to ensure that the maximum number of persons stay in their places of residence to the maximum extent feasible, while enabling essential services to continue, to slow the spread of COVID-19 to the maximum extent possible." (Defendants' RJN at Ex. 11, ¶ 1.) The County elected to achieve this goal by deeming certain businesses, travel, and services "essential" and restricting businesses, travel, and services that were not deemed essential. Because those limitations restrict in-person contact, they are substantially related to the objective of preventing the spread of COVID-19. Plaintiffs allege in the FAC and argue in their Opposition that the County acted arbitrarily or erroneously by not deeming firearm retailers, ammunition retailers, and firing ranges "essential businesses." (Opp. at p. 14:15-15:8; FAC at ¶¶ 2-3, 58, 65, 72-76, 81.) This argument is unavailing. *Jacobson* holds that it is not the role of the judiciary to second-guess policy choices favoring one of two modes of preventing the spread of a disease, which is precisely what Plaintiffs request this Court to do. *Jacobson*, 197 U.S. at 30. Moreover, Plaintiffs do not dispute that the stay well at home orders bear a substantial relation to the County's objective of limiting the spread of COVID-19.

Under the second test of *Jacobson*, the stay well at home orders must not affect "beyond all question, a plain, palpable invasion of" the Second Amendment. *Jacobson*, 197 U.S. at 31. In *Altman v. County of Santa Clara*, ---- F.Supp.3d ----,

2020 WL 2850291, at *10 (N.D. Cal. June 2, 2020), the district court found there to be "significant overlap between the 'plain, palpable invasion' prohibited by *Jacobson* and the 'complete prohibition' on the Second Amendment right that [*District of Columbia v. Heller*, 554 U.S. 570, 629 (2008)] deemed categorically unconstitutional."[6] Because this approach unifies the *Jacobson* framework with modern constitutional jurisprudence, the Court applies the reasoning of *Altman* to determine whether a "plain, palpable" invasion of the Second Amendment resulted from the enactment of the stay well at home orders.

"[T]he Second Amendment protects the right to possess a handgun in the home for purposes of self-defense." *McDonald v. City of Chicago*, 561 U.S. 742, 791 (2010) (holding Second Amendment is incorporated to the states via the Fourteenth Amendment). The "core" Second Amendment right to keep and bear arms includes the rights to acquire firearms, purchase ammunition, and maintain proficiency in firearms use. *See Teixera v. County of Alameda*, 873 F.3d 670, 677-678 (9th Cir. 2017).

Defendants argue the temporary nature of the stay well at home orders and amendments thereto that were solicitous to McDougall distinguish the stay well at home orders from the categorical ban of handguns at issue in *Heller*. Moreover, Defendants argue the right to purchase firearms is subject to regulation without violating the Second Amendment. *See Heller*, 554 U.S. at 626-27 ("[N]othing in our opinion should be taken to cast doubt on … laws imposing conditions and qualifications on the commercial sale of arms."). Although Plaintiffs do not apply the *Jacobson* framework, they maintain the stay well at home orders "*completely denied* access to, and any lawful transactions involving, firearms and ammunition throughout the county." (Opp. at p. 19:19-21.) Thus, the Court may surmise that, in Plaintiffs' view, the stay well at home orders are analogous to the complete ban

---

[6] The "complete prohibition" in *Heller* refers to laws of the District of Columbia that "generally prohibit[ed] the possession of handguns." *Heller*, 554 U.S. at 574, 629.

13

of handguns at issue in *Heller*, and therefore affected a plain and palpable violation of the Second Amendment right.

Here, the Court finds the stay well at home orders did not amount to a plain and palpable violation of the Second Amendment, as required by *Jacobson*. Unlike the total prohibition of handguns at issue in *Heller*, the stay well at home orders are temporary and do not violate the Second Amendment. *See Silvester v. Harris*, 843 F.3d 816, 827 (9th Cir. 2016); *Altman v. County of Santa Clara*, ---- F.Supp.3d ----, 2020 WL 2850291, at *11-12. *Silvester*, 843 F.3d at 827, provides the closest analog to the temporary closure of firearms retailers and ranges at issue here. *Silvester* involved a challenge to California's 10-day waiting period to take possession of firearms. In upholding the law, the Ninth Circuit reasoned that "[t]he waiting period does not prevent any individuals from owning a firearm" or impose restrictions on the manner in which firearms are stored after they acquired. *Id.* Rather, the "actual effect" caused by the delay was "very small[,]" and one cognizable in the historical understanding of the Second Amendment:

> There is, moreover, nothing new in having to wait for the delivery of a weapon. Before the age of superstores and superhighways, most folks could not expect to take possession of a firearm immediately upon deciding to purchase one. As a purely practical matter, delivery took time. Our 18th and 19th century forebears knew nothing about electronic transmissions. Delays of a week or more were not the product of governmental regulations, but such delays had to be routinely accepted as part of doing business.

*Silvester*, 843 F.3d at 827. As in *Silvester*, the effect of the stay well at home orders was to delay Plaintiffs' ability to acquire and practice with firearms and ammunition and not to prohibit those activities. Thus, Plaintiffs have not demonstrated that the temporary closure of firearms retailers constitutes a plain and palpable violation of their Second Amendment right.[7]

---

[7] At least one other district court has considered whether a facially neutral emergency order to curb COVID-19 violates the Second Amendment. In *Altman v. County of Santa Clara*, ----

14

Therefore, the Court **GRANTS** the motion to dismiss with prejudice because the stay well at home orders did not amount to a violation of the Second Amendment under the standard set forth in *Jacobson*.

        c.      **The Stay Well At Home Orders Satisfy Traditional Constitutional Analysis**

The Court need not analyze Plaintiffs' Second Amendment claim under traditional constitutional scrutiny because *Jacobson* applies. Nonetheless, the Court finds the claim does not survive a motion to dismiss under the Ninth Circuit's traditional framework for Second Amendment claims.

"The Ninth Circuit assesses the constitutionality of firearm regulations under a two-prong test. This inquiry '(1) asks whether the challenged law burdens conduct protected by the Second Amendment and (2) if so, directs courts to apply an appropriate level of scrutiny.'" *Duncan v. Bacerra*, 970 F.3d 1133, 1145 (9th Cir. 2020) (quoting *Chovan*, 735 F.3d at 1136) (internal citations omitted)). The Ninth Circuit "appears to ask four questions" to determine whether a challenged law burdens protected conduct: (1) "whether the law regulates 'arms' for purposes of the Second Amendment;" (2) "whether the law regulates an arm that is *both* dangerous *and* unusual;" (3) "whether the regulation is longstanding and thus presumptively lawful;" and (4) "whether there is an persuasive historical evidence in the record showing that the regulation affects rights that fall outside the scope of the Second Amendment." *Duncan*, 970 F.3d at 1145 (citations omitted). If the regulated arm is dangerous and unusual, persuasive historical evidence shows the regulation affects rights outside the scope of the Second Amendment, or the regulation is longstanding and presumptively lawful, then the law does not burden protected conduct. *Id.*

---

F.Supp.3d ----, 2020 WL 2850291, at *11-12, Judge Tigar of the Northern District of California held the County of Alameda's emergency orders did not violate the Second Amendment under *Jacobson* because the restrictions were facially neutral and temporary.

For purposes of this motion, the Court assumes the stay well at home orders burden protected conduct. Therefore, the Court "must proceed to the second prong of analysis and determine the appropriate level of constitutional scrutiny." *Id.* To determine the appropriate level of constitutional scrutiny, the Court asks "how 'close' the challenged law comes to the core right of law-abiding citizens to defend hearth and home;" and "whether the law imposes substantial burdens on the core right." *Id.* at 1146. "Only where both questions are answered in the affirmative will strict scrutiny apply." *Duncan*, 970 F.3d at 1146 (citing *Silvester*, 843 F.3d at 821).

The Court finds the stay well at home orders do not substantially burden the Second Amendment. The stay well at home orders are analogous to and less restrictive than the waiting periods upheld in *Silvester*, 843 F.3d at 827, because the stay well at home orders are temporary, do not specifically target Second Amendment activities for restriction, and do not impose a categorical ban on the ownership of arms. Plaintiffs attempt to distinguish *Silvester* by arguing the statutory waiting periods apply only to "firearm transactions (not ammunition)" and the stay well at home orders "impose[d] a significant and severe *additional* burden on the core rights at stake." (Opp. at p. 24, n.5.) Plaintiffs' argument is unpersuasive. In *Silvester*, the waiting period law was challenged regarding its application "to those purchasers who have previously purchased a firearm or have a permit to carry a concealed weapon, and who clear a background check in less than ten days." *Silvester*, 843 F.3d at 818. Thus, the waiting period law created an additional layer to existing state laws regulating the manner in which firearms are purchased. The Ninth Circuit rejected the argument that stricter scrutiny of the waiting period law was required because the law added to existing regulations, holding that the waiting period law served other interests. *Id.* at 828-29.

Because the stay well at home orders do not substantially burden the core right of the Second Amendment, the Court finds that intermediate scrutiny is the

| | |
|---|---|
| 1 | appropriate standard of review if *Jacobson* does not apply. *See Duncan*, 970 F.3d |
| 2 | at 1146. Under intermediate scrutiny, the second-step of *Chovan* requires two |
| 3 | elements be met: "(1) the government's stated objective must be significant, |
| 4 | substantial, or important; and (2) there must be a 'reasonable fit' between the |
| 5 | challenged regulation and the asserted objective." *Id.* at 821-822. Here, the |
| 6 | stated objective of the County Orders is to prevent the spread of COVID-19, and |
| 7 | the parties do not dispute that this interest is important. Therefore, the Court must |
| 8 | determine whether there is a "reasonable fit" between temporary closure of |
| 9 | firearms retailers and ranges and slowing the spread of COVID-19. The County |
| 10 | determined that "social isolation is considered useful as a tool to control the |
| 11 | spread of pandemic viral infections," such as COVID-19. (Defendants' RJN at |
| 12 | Ex. 11, p.1.) Thus, there is a reasonable fit between the County's objective of |
| 13 | slowing the spread of COVID-19 and the temporary closure of non-essential |
| 14 | businesses, including firearms retailers. Plaintiffs argue that it was unnecessary |
| 15 | for the County to deem firearms retailers and ranges non-essential to slow the |
| 16 | spread of COVID-19, but "intermediate scrutiny does not require the least |
| 17 | restrictive means of furthering a given end." *Silvester*, 843 F.3d at 827. Therefore, |
| 18 | even though Defendants may have been able to adopt less restrictive means of |
| 19 | achieving its goal of reducing the spread of COVID-19, it was not required to do |
| 20 | so. |
| 21 | /// |
| 22 | /// |
| 23 | /// |
| 24 | /// |
| 25 | /// |
| 26 | /// |
| 27 | /// |
| 28 | /// |

Therefore, the Court finds that the stay well at home orders survive intermediate scrutiny in this case.

## V. CONCLUSION

The Court **GRANTS** the motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) with prejudice.

**IT IS SO ORDERED.**

DATED: October 21, 2020

_____
CONSUELO B. MARSHALL
UNITED STATES DISTRICT JUDGE